## City of Harrisburg *versus* Saylor.

1. By an ordinance the councils of the city of Harrisburg directed the construction of new waterworks. It was provided therein that a committee should be appointed, who should advertise for proposals, make contracts subject to the approval of councils, and employ an engineer, to prepare the necessary plans and specifications. The engineer, with the authority of the committee, but without the approval of councils, entered into a parol contract with a company to make certain connections in the pipes. In the performance of this contract, through defective machinery and negligent work, on the part of the company, an explosion occurred, whereby S. was injured and died. *Held,* that the city was responsible.

2. The question of contributory negligence is a mixed question of law and fact. When the facts are undisputed the court should declare the law thereon, but where the evidence of contributory negligence is conflicting, or the facts on which a right to recover are rested are controverted, a jury should pass upon that evidence and upon those facts.

May 24th 1878. Before MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. AGNEW, C. J., and SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1878, No. 51.

Case by Mary A. Saylor against the city of Harrisburg, to recover damages for the death of her husband, which the plaintiff alleged was occasioned by the use of defective machinery in the construction of the city waterworks, upon which the deceased was engaged at work at the time of his death.

[City of Harrisburg *v.* Saylor.]

At the trial it appeared, that on the 8th of March 1871, the city by ordinance directed the construction of new waterworks and a reservoir, and authorized the appointment of a committee, who were specially charged with the duty of advertising for proposals, making contracts, employing an engineer to prepare plans, &c. All contracts, however, were to be made subject to the approval of councils.    The committee employed H. P. M. Birkenbine, as engineer, and made contracts for the work, awarding to the Harrisburg Foundry and Machine Company, the contract for two pumping-engines and for the erection of the stand-pipe, and to Heikel, Opperman & Co., that for making the foundations for the engines, engine-house, boilers, &c.    During the progress of the work, in order to keep the city supplied with water, it became necessary to connect the stand-pipe with the old reservoir.    It was decided to connect the sixteen-inch main with the twenty-four inch forcing-pipe, leading from the stand-pipe toward what was called the low-pressure engine, not then in place, by bringing the sixteen-inch pipe from Front street, around the stand-pipe, and connecting it by means of a Y with the twenty-four inch forcing-main, between the place for the low-pressure engine and the stand-pipe. The contract for the work was, as above set forth, given by the water committee, through Mr. Birkenbine, to the Harrisburg Foundry and Machine Company, without the previous sanction, or subsequent ratification of councils.    By the terms of that contract, which was in parol, the company was to cast the pipe according to drawings furnished by the engineer, Birkenbine, furnish all the material and labor, put the pipe in place, and make the connections, and to be paid for the same what the work and material were reasonably worth.

The drawings for the Y casting furnished by the engineer, had on them what are called lugs, or projections for clamps, or stirrups, and the Y was cast with these lugs for clamps upon it.

On or about the 28th of November 1874, the Y was put in place, and the connection made by the company, under the parol contract before mentioned, and left incomplete.    The clamps or stirrups, were not put on the Y, as indicated by the drawing supplied by the engineer, so as to make it secure.    The pipes were only soldered together by a plumber, in the employ of the company.    The city was thus supplied with water for about twenty days, when it was arranged to pump the water into the new reservoir.    On the morning when the attempt was made, it was found that the engine was being run carelessly by the superintendent of the Machine Company, who was in person driving and directing its running. Saylor, the deceased, was at work with other employees of Heikel, Opperman & Co., in a pit separated by a board partition from the engine, preparing the foundations for the second engine.    A leak was sprung in the pipe near to the Y, the water from which ran into the pit where Saylor and the others were working.    Some of

[City of Harrisburg *v.* Saylor.]

them noticed it and observed that the water increased with every thump of the engine. The attention of one of the firm of Heikel, Offerman & Co., being called to this, he directed his employees to come out of the pit, which they did. After being out, Saylor, with others, went back into the pit to get their coats. On his way out again, the pressure from the engine having been increased, the Y blew off, tearing away a wall in front of it, scattering debris in all directions and dropping itself down into the pit, injuring Saylor, from the effects of which he died within about forty-eight hours.

It appeared that the cause of the accident was the rapidity with which the engine was run, and the neglect to clamp or stirrup the Y connection. There was a conflict of testimony as to whether the return of Saylor for his coat contributed to his death. The evidence was also conflicting as to whether the connection was made by the direction and under the supervision of the engineer, Birkenbine, or whether the company was exercising an independent employment in making the same. The workmen were paid by the company, who charged their wages in their account with the city.

In the general charge, the court, Henderson, A. L. J., inter alia, said:

["Here we instruct you, that if David Saylor was guilty of contributory negligence, the plaintiff cannot recover. If his injury and death resulted from his own recklessness, in going back into the pit, after warned of his danger, the plaintiff cannot recover. You will consider whether he acted with recklessness, or in a rash manner, thereby contributing to his own injury and death.]

* * * "We instruct you, that if the Harrisburg Foundry and Machine Company undertook and agreed to furnish the castings and make the connections and complete the work, they were bound to do so in a full, complete and proper manner. They were not the servants of the city, nor should they be so considered; and if they failed to complete the work and make it satisfactory, the city would not be responsible.

["On the other hand, if they were employed by the city, by Mr. Birkenbine, to do this work under his instructions and personal direction as to the manner of work, the city would be responsible for anything resulting therefrom by reason of negligence or defective work. So you will weigh the matter and examine the evidence touching upon this with some care, and determine whether the contract was made between the Harrisburg Foundry and Machine Company and Mr. Birkenbine to do this work and make this connection and furnish the castings from the plans furnished by Mr. Birkenbine, but at the same time to do it as a work of their own; or were they employed by Mr. Birkenbine, simply to do it with their hands, under his direction? If in the former way, then the city would not be responsible. If under the direction of Mr. Birkenbine, the agent of the city, the engineer of the works—if he had

[City of Harrisburg v. Saylor.]

the management and control of those hands—gave directions how the work was to be done, then the city would be responsible. Then it was Mr. Birkenbine's duty to have seen to the putting on of the clamps at the proper time, before pumping water through these pipes, as it was intended.]

* * * "Was Mr. Birkenbine the proper person to control the engine there, or was it some other person? As to him and the other witnesses, you will recollect the testimony. He says he was there engaged in testing the engine, and that at this time the engine was not working properly, by reason of the obstructions coming into it; that they were pumping with but one side; that the knocking and thumping and the hammering was equal to a strain of about eight hundred tons, I think Mr. Birkenbine said, and that that was the cause of the separation of those pipes. [If you determine that the city had control of the engine at that time, and that it caused the separation, it was their negligence.] But if under the control of the Harrisburg Foundry and Machine Company, and they, by an improper use of that engine, whilst they were there and having it under their control, and without directions or instructions from the city, used it in that way, so as to contribute to that accident, it would relieve the city from responsibility, or its consequences."

The verdict was for plaintiff for $3850, one-third of which was remitted when judgment was entered thereon.

The city then took this writ, assigning for error, inter alia, the foregoing portions of the charge noted in brackets.

*Thomas S. Hargest* and *L. W. Hall*, for plaintiff in error.—It was beyond the scope of the authority of the engineer or the water committee to make a contract with the company without first having advertised for proposals and obtained the sanction of councils.

If there was no power or authority in the water committee, nor in the engineer, to make the contract, "arrangement," or "employment," out of which the action arose, those who did the work were mere volunteers, and they, not the city, would be liable for the injury. Whatever power was vested in the committee on new waterworks to make contracts was delegated to them by the city, under the restrictions contained in the ordinance, not to the engineer or other person; and that power could not be sub-delegated. It was incumbent upon the plaintiff to show by affirmative proof the authority for making the contract. It was, therefore, error in the court below to assume, in the face of indubitable proof to the contrary, that the engineer "had ample power" to make the contract out of which the action arose. Though a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule as to the effect of a like act of a public agent, or the officers or agents of a municipal corporation, is otherwise: Mayor, &c., of Baltimore *v.* Eschbach,

[City of Harrisburg *v.* Saylor.]

18 Md. 276. City officials cannot bind the city by unauthorized acts: Burns *v.* Mayor of New York, 5 N. Y. 471; Anthony *v.* Adams, 1 Metc. 284; Seibrecht *v.* New Orleans, 12 La. Ann. 496. The court should have instructed the jury, as matter of law, on the facts in this case, that the engineer had no such authority as was claimed.

It was contributory negligence in Saylor to go back into the pit. It was undisputed that he went back on his own motive, after he had received notice of the danger, and had for that reason left the pit, and was safely out of harm's way. He went back subsequently, not for us, or by our order. There was, therefore, no room ·for the judge to put the question, "Was it contributory negligence in going back into the pit?" Whether a given state of undisputed facts constitute negligence, is a question of law. There is nothing for a jury to do—the facts being conceded or not denied—but to apply the law as it is declared from the bench. If there was any question on this branch of this case for the jury at all, it was, "Did the deceased's going back into the pit contribute to his injury and death?" The court nowhere, either in the general charge, or in answer to the points, put on both sides, touch that, the real point, if the question was to go to the jury at all. If the deceased had warning or opportunities of knowledge of danger, he should have been charged with it, and the court should have so instructed the jury: Pennsylvania Railroad Co. *v.* Henderson, 7 Wright 449; Pittsburgh and Connellsville Railroad Co. *v.* McClurg, 6 P. F. Smith 294; McKee *v.* Bidwell, 24 Id. 218; Central Railroad Co. of New Jersey *v.* Feller, 3 Norris 226; Boys *v.* Pennsylvania Railroad Co., 2 Id. 198. The company was exercising an independent employment in making the connection, and was in charge of the engine.

*J. C. McAlarney* and *J. W. Simonton,* for defendant in error.— Whether the foundry and machine company were the servants of the city was a question of fact under the evidence, as the employment was by parol, and as such was properly submitted to the jury. What is negligence is always a question for the jury, when the measure of duty is ordinary and reasonable care, and where the standard of the degree of care shifts with circumstances: West Chester and Philadelphia Railroad Co. *v.* McElwee, 17 P. F. Smith 311; Johnson *v.* West Chester and Philadelphia Railroad Co., 20 Id. 357; Pittsburgh, Allegheny and Manchester Railroad Co. *v.* Pearson, 22 Id. 169; McKee *v.* Bidwell, 24 Id. 223; Crissey *v.* Hestonville, Mantua and Fairmount Passenger Railway Co., 25 Id. 83. Where there is conflicting evidence, the question of concurrent negligence is for the jury: McCully *v.* Clark, 4 Wright 399; Pennsylvania Railroad Co. *v.* McTighe, 10 Id. 316; Oakland Railroad Co. *v.* Fielding, 12 Id. 320; Johnson *v.* Bruner, 11

[City of Harrisburg *v.* Saylor.]

P. F. Smith 58; Philadelphia and Reading Railroad Co. *v.* Long, 25 Id. 257; Pennsylvania Canal Co. *v.* Bentley, 16 Id. 30. Where there are controverted facts, the question of negligence is for the jury: Pennsylvania Railroad Co. *v.* Ogier, 11 Casey 60.

The judgment of the Supreme Court was entered June 10th 1878,

PER CURIAM.—A careful examination of the record in this case, discloses no sufficient ground for reversal. The question of contributory negligence is a mixed question of law and fact. It is true when the facts are undisputed the court should declare the law thereon. Inasmuch, however, as the measure of duty is generally ordinary and reasonable care, the standard of the degree of care required, shifts with the circumstances: McKee *v.* Bidwell, 24 P. F. Smith 218; Crissey *v.* Hestonville Railway Co., 25 Id. 83. When the evidence of concurrent negligence is conflicting, or the facts on which a right to recover are rested are controverted, a jury should pass upon that evidence, and upon those facts. The controlling facts in this case were controverted, the evidence was conflicting. It was therefore right to submit them to the jury, as the court did, with a clear and correct statement of the law.

Judgment affirmed.

Immediately after this judgment was entered the counsel for plaintiff in error moved for a re-argument, alleging as a principal reason therefor that only one assignment of error had been considered by the court.

On the 17th of June 1878, Mr. Justice MERCUR delivered the following opinion:—

Although our decision mentions and seems to relate to but one assignment of error—that of contributory negligence—yet we considered all the questions raised in the case, so fully and ably argued both in the paper-book and at the bar.

Motion for re-argument overruled.