# Armstrong & Latta *v.* City of Philadelphia, Appellant.

*Contracts—Construction—Ownership of tools—Subcontractor—Replevin—Damages.*

1. A provision in a contract between a contractor and a municipality, that the former must furnish tools and machinery for the completion of the work, does not vest in the city title to the machinery furnished by the subcontractor on the work.

2. Where in such case the subcontractor brought an action of replevin to recover tools and machinery detained by the city, under a claim of ownership, he was entitled to recover damages for the detention of his property including the value of the use thereof during the period of detention, but should not have been allowed to recover as damages more than twice the value of the goods for a detention of eleven months.

3. The measure of damages for detention of rentable property is the original rental value which covers compensation for deterioration by use; if the property detained was not used, the value of deterioration by use must be deducted from the rental value.

4. The measure of damages for detention of property by nature not rentable seems to be interest and depreciation in value, unless where there have been particular circumstances of fraud, oppression or wrong in the taking or detention of the property when punitive damages may also be allowed in all cases.

5. Additional damage for delay in payment will not be allowed when plaintiffs waited over six years without asserting their rights by prosecuting their claim to judgment.

6. An amendment which merely introduces an additional element of damage drawn out of the same circumstances, may be allowed at any time, as it does not introduce a new cause of action.

7. An amendment to the statement making a further claim for damages for detention of the property was properly allowed, but a claim for damages for delay in payment cannot be first introduced by amendment more than six years after the original statement was filed.

*Municipal corporations—Liability for torts of agents.*

8. Where a municipal corporation undertakes to construct and operate a filtration plant, for the purpose of supplying water to its inhabitants, it is exercising a business, as distinguished from a governmental function and the maxim respondeat superior applies

to the acts of its officers and agents in exercising such function. There was no ground, therefore, for contending in such case that the defendant city was not liable for damages for the detention of the tools and machinery of the plaintiff.

*Appeals—Practice, Supreme Court—Questions not raised in court below.*

9. An appellate court will not review a case on a theory different from that upon which it was tried by the court below, nor will it consider questions which were not raised in the lower court, but were argued for the first time on appeal.

Argued Jan. 19, 1915. Appeal, No. 260, Jan. T., 1914, by defendant from judgment of C. P. No. 5, Philadelphia Co., March T., 1906, No. 2489, on verdict for plaintiff, in case of William J. Armstrong and Thomas L. Latta, trading as Armstrong & Latta, v. City of Philadelphia. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Replevin for tools and machinery. Before MARTIN, P. J.

From the record it appeared that the provisions of the contract between McNichol and the city relating to the tools and machinery were as follows:

GENERAL PROVISIONS.

"154. Prices to Include.—The prices specified in the accepted proposal shall include the furnishing and erection in a good, sound, substantial and workmanlike manner, of all items required for the completion of the whole work proposed for, and shall include all items shown and described in the specification; also, all dams, pilings, shorings, sheeting, forms, centering, falseworks, tramways, machinery, scaffolding, pumping, labor, workmanship, tools and materials necessary and best adapted to the efficient, prompt and safe execution of both the permanent and temporary works. All materials used must be of the best quality, and all work must be executed according to the true intent and meaning of the

drawings and the specification as may be necessary for the proper and entire completion of the structures.

"156. Personal Attention.—The contractor will be required to give the prosecution of the work his faithful personal attention, and will not be permitted to assign or sublet the same, excepting as herein provided, but shall at all times keep it under his control. In case of his absence he must have a competent representative or foreman on the work, who shall receive orders and directions from the engineer, or his authorized assistants and inspectors, and said representative or foreman shall have full authority to supply tools, materials, appliances and labor to carry on the work diligently and continuously until its completion.

"(The clause with reference to subletting will not be construed to prevent a general contractor from purchasing materials from approved manufacturers and dealers.)  The contractor who is not a manufacturer of or dealer in materials, will be required to state the names and addresses of the manufacturers of or dealers in the materials which he proposes to supply, subject to the approval of the engineer. (See p. 101, of this book.)"

Other facts appear in the opinion of the Supreme Court.

Verdict for plaintiff for $13,774 damages and $604.34 for delay in payment and judgment thereon.  Defendant appealed.

*Errors assigned* were rulings on evidence, in permitting plaintiffs to amend their statement of claim, in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Paul Reilly,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellant.

*Henry P. Brown,* with him *John Kent Kane,* and *Hampton L. Carson,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 12, 1915:

The City of Philadelphia contracted with Daniel J. McNichol for work on a filtration plant, under which contract McNichol was to furnish materials, tools, machinery and equipment for the execution of the work at the Torresdale Intake. McNichol later entered into a contract with plaintiffs by which the latter were to furnish the labor and materials in the construction of a coffer dam required in the prosecution of the work, and to furnish all tools, implements and machinery necessary for that purpose. Plaintiffs began work in 1905 and continued until June 16th of that year, when they were ordered to stop by reason of trouble between the city and McNichol in the prosecution of the work under the latter's contract. Plaintiffs then attempted to remove their tools and machinery and were prevented from doing so by officers of the city who were in charge of the work, and who contended that the property was vested in the city under the terms of its contract with McNichol.

On March 18, 1906, following both oral and written negotiations between plaintiffs and the city, plaintiffs wrote the chief of the Bureau of Filtration stating that the tools and machinery belonged to them and were not the property of McNichol and that they were needed in plaintiffs' business. This communication was not answered, and defendant persisted in its refusal to permit the tools and machinery to be removed. On April 10, 1906, a writ of replevin was issued by plaintiffs, and on May 8th an agreement of counsel was filed, under which plaintiffs were to receive the property from the sheriff and retain possession under the replevin bond filed by them. Plaintiffs claim damages for loss incident to the detention of the property from June 16, 1905, to May 8, 1906, the date on which they were given possession.

Plaintiffs' original statement places the value of the property at $4,400.00, which is based on its cost to them. In the amended statement filed, the value is increased to $6,595.84. Mr. Latta, one of the plaintiffs, testified that

the articles were in first-class condition and could be bought for $6,500. Since the property was actually delivered to plaintiffs, this item is eliminated as a measure of damage and is referred to only because of its bearing on the measure of damages for the period of dentention, which the jury fixed at $13,774.00, with $604.34 added as compensation for delay in payment, making a total of $14,378.34.

Defendants have laid particular stress in their argument on the contention that the property passed to them under the principal contract by which the contractor was to furnish all items required for the completion of the work, including machinery, tools, materials, etc., claiming that these articles became the property of the city upon the completion of the work and that therefore plaintiffs had no right or title therein as their right could rise no higher than that of the principal contractor. This question, as far as the record shows, was not raised in the lower court, but appears to have been an afterthought and is raised for the first time on this appeal. The charge of the court contains nothing to indicate that there was before it any disputed question of ownership of the property and the necessity of submitting such question to the jury was not suggested by counsel, nor was there any contention, as far as the record shows, that, as a matter of law under the contract, plaintiffs were not entitled to recover. It is a well established rule that the appellate court will not review a case on a theory different from that upon which it was tried by the court below, nor will it consider questions which were not raised in the lower court, but were argued for the first time on appeal. For this reason the question of ownership of the property might well be treated as settled by the acts of the parties as being in plaintiffs; however, as this case must go back for another trial, we deem it proper to state that the ownership of the property in dispute under proper interpretation of the pro-

visions of the contract was in plaintiffs and should be so treated by the parties.

It is argued by defendant that it is not liable for the acts of its officers and agents in seizing the property, for the reason that at the time there was no work being done, and therefore any wrongful act committed with reference to the property of plaintiffs was an act by the servants of the city without authority and not in the course of the performance of any duty incident to their office or employment, and that the responsibility for their acts must rest on their own shoulders, and to them plaintiffs must look for redress.

When a municipal corporation undertakes to construct and operate a filtration plant for the purpose of supplying water to its inhabitants, it is exercising a business, as distinguished from a governmental function and the maxim respondeat superior applies to the acts of its officers and agents in exercising such function: Philadelphia v. Gilmartin, 71 Pa. 140; Bodge v. Philadelphia, 167 Pa. 492; Harrisburg v. Saylor, 87 Pa. 216; Morgan v. Duquesne Boro., 29 Pa. Superior Ct. 100. Nor is it material that the actual work on the contract had been suspended. The officers and employees, who had charge of the department under which this particular work was done, were acting as much for the city in refusing to surrender the property as in doing any other act incident to the work. It appears they acted in good faith, and for the purpose of serving the city, by holding what they believed to be the property of the city. While a city can act only through its officers, upon one of its officers necessarily devolved the duty of determining whether the municipality owned the property in dispute, and, if so, it was the duty of that officer to see that its rights were enforced. The question was one which arose immediately in connection with the performance of the work contracted for, and was as much within the scope of the duty of the representatives of the municipality as any other matter connected with the enforce-

ment of the terms of the contract: Philadelphia v. Gilmartin, supra.

The question of the measure of damages is a more difficult one. The general rule in an action of replevin, where the plaintiff has finally secured possession of the property, is that he may recover damages for detention and any costs incident thereto: Cobbey on Replevin, Sec. 853; Fisher v. Whoolery, 25 Pa. 197; Duroth Mfg. Co. v. Cauffiel, 243 Pa. 24. These damages are usually measured by interest and depreciation in value: Cobbey on Replevin, Sec. 877; McDonald v. Scaife, 11 Pa. 381; Duroth Mfg. Co. v. Cauffiel, 243 Pa. 24; Cox v. Burdett, 23 Pa. Superior Ct. 346; Allen v. Fox, 51 N. Y. 562. Exemplary damages may also be allowed in cases where there have been particular circumstances of fraud, oppression, or wrong in the taking or the detention of the property: McDonald v. Scaife, 11 Pa. 381; Wiley v. McGrath, 194 Pa. 498. There being no evidence in this case to support a claim for such damages the only question is as to the proper measure to compensate plaintiffs for the injuries sustained.

When property is capable of such physical use and enjoyment as cannot be compensated by allowance of interest, it is necessary to consider the value of such use. Thus where the property detained consists of horses, tools, implements of trade, etc., the general rule is that the party deprived of possession is entitled to the reasonable value of the use during the period of wrongful detention: Cobbey on Replevin, Sec. 887, 889, and cases cited.

The general theory and basis of this rule is well stated by the Supreme Court of New York in Allen v. Fox, 51 N. Y. 562, which was an action to recover possession of a horse. Title was found to be in defendant, who gave evidence of the value of the use of the horse during the period plaintiff had it in his possession under the writ. This evidence was admitted under objection. The jury found the value of the horse to be $175 and the value of

its use $75. In affirming the judgment the Supreme Court said: "In the action of replevin, the plaintiff seeks to recover the property, and is, in all stages of the case to final judgment, in pursuit of that, and not its value. And during the whole time the defendant may have the possession and the use (if it can be used) of his property. At the termination of the suit it is not optional with him to take the property or its value. If the defendant has the property, and will permit him to take it, he is obliged to take it (Code Sec. 277; Dwight v. Enos & Janes, 9 N. Y. 470; Fitzhugh v. Wiman, 9 N. Y. 559). Hence the plaintiff cannot always be expected or required, in such cases, to go into the market and supply himself with the same kind of property at its market value. Suppose the controversy be about a canal boat or a carriage, or an expensive machine. If the plaintiff should go into the market and buy another, at the end of the litigation, in case of success, he would have on hand duplicates of the article, and would thus be subjected to further loss and inconvenience.......What should be the measure of damages for the detention? In many cases interest on the value from the time of the wrongful taking would be a proper measure. It would be generally in all cases where the property detained was merchandise kept for sale, grain and all other articles or property useful only for sale or consumption. In such cases, if the owner recover the interest on the value of his property from the time he was deprived of it, he will generally have a complete indemnity unless the property has depreciated in value, in which case the depreciation must be added to the interest on the value, taken as it was before the depreciation, and the two items will furnish the amount of the damage. This damage, together with the property or its value at the time of the trial, will give the owner as complete indemnity as the law is generally able to give any person seeking redress for a wrong. But the same measure of damages would not generally furnish the owner an indemnity in

case the property claimed had a value for use, or, in other words, a usable value, such as horses, cows, carriages and boats. In such case the direct damage which the owner suffers is the loss of the use, and the value of the use should be the measure of damage."

In determining the value of the use under the above rule, care should be taken not to permit the fixing of an amount out of all proportion to the value of the thing itself; otherwise the result is not compensation for use but punishment for a wrong, in a case where exemplary damages, as such, would not be allowed. Plaintiffs at the trial submitted a written calculation of damages, consisting of the rental value of the machinery from June 16, 1905, to April 12, 1906, the time during which defendant had possession and refused to turn it over to plaintiffs, by reason of which plaintiffs were deprived of its use. The calculation shows a claim amounting to $13,774.00 for the use of the machinery for a period less than one year. This estimate, according to the testimony in the case, is more than twice the price at which the property could be replaced. If the true measure of damage is such amount as will compensate plaintiff for the loss sustained, the damages given in the present case are grossly in excess of such measure. For instance, it would have been extremely profitable for plaintiffs if defendant had retained the machinery indefinitely, as plaintiffs would have obtained sufficient compensation each year from the rental value to purchase two or more entire new plants. This amount of damage shows on its face that there is something radically wrong in the method of calculation, if compensation is to be taken as the proper measure: Brunell v. Cook, 13 Mont. 497; Romberg v. Hughes, 18 Neb. 579.

In the charge of the court, the plaintiffs' second point, to the effect that damages should be allowed for detention measured by the ordinary market or rental value of the use of the property during the period of detention, was affirmed. If defendant had actually made use of the

property, there would naturally have been some deprecia-
tion in its value because of such use, and, when plaintiffs
received possession, they would take it subject to this de-
preciation, for which they would be compensated in
rental value. They could not recover both. There is
here no evidence of the ordinary amount of depreciation
by use, but in view of the fact that the rental value was
so high in proportion to the amount of money invested,
the depreciation, from a business point of view, must be
considerable. If defendant did not use the property, the
deterioration which it would have suffered by use must
be deducted from the value of the use: Brunell v. Cook,
13 Mont. 497; Peerless Machinery Co. v. Gates, 61 Minn.
124; White v. Sheffield & Tuscumbia St. Ry. Co., 90 Ala.
253; and the jury should have been so instructed. They
should also have been instructed to take into consider-
ation the fact that plaintiffs might not have been able
either to use or rent the tools and machinery continu-
ously during the eleven months, and, if they so found,
this fact would also materially reduce the measure of
damages.

The amount of damages for detention should also bear
some reasonable proportion to the value of the goods:
Romberg v. Hughes, 18 Neb. 579; in the absence of
evidence of extraordinary conditions or circumstances
tending to enhance the damages above ordinary results:
Brunell v. Cook, 13 Mont. 497.

There was no error in the allowance of the amendment,
even though the statute of limitations had run at the
time it was made. It is true that the amended state-
ment claims for an additional item of damage, to wit,
the wrongful detention of the property, and alleges that,
by reason thereof, plaintiffs lost the rental value to the
extent of $18,000.00. In the original statement there
was no claim for loss of the use of the machinery and
tools, but only for the tools themselves. The criterion
adopted for determining whether or not an amendment
is within the statute of limitations, is whether the cause

of action has been changed: Rochester Boro. v. Kennedy, 229 Pa. 251. The cause of action in both the original and amended statements is the wrongful taking and detention of the property. In the amended statement there is no departure from this cause of action, but merely an additional claim of damages because of the detention of the property. It is well settled law that an amendment which merely introduces an additional element of damage drawn out of the same circumstances may be allowed at any time, as it does not introduce a new cause of action: Tassey v. Church, 4 W. & S. 141; Puritan Coal Mining Co. v. Penna. R. R. Co., 237 Pa. 420; Jackson v. Gunton, 26 Pa. Superior Ct. 203.

The trial judge charged that if plaintiffs were entitled to damages for detention of their property, they were also entitled to additional damage for delay in payment, not exceeding six per cent. In the original statement filed, no claim is made for damages for detention, nor was any such claim made until nearly seven years later, during which time plaintiffs were in possession of the property and failed to prosecute their claim for damages. Plaintiffs themselves were apparently in doubt as to their right to recover damages for the detention, and after waiting over six years without asserting their rights by prosecuting their claim to judgment, they are not now in a position to ask compensation for delay in payment.

There was no error in permitting plaintiffs to send out with the jury a calculation of the items of damage claimed. This is within the discretion of the court and is proper so long as the paper contains no items not supported by evidence and the jury are instructed that the calculations are not evidence but are merely to be used as an aid to their own calculations: Person & Riegel Co. v. Lipps, 219 Pa. 99; Anderson v. Snyder, 14 Pa. Super. Ct. 424. This was done in the present case. On a new trial, however, such calculations, if submitted, should be

governed by the measure of damages outlined in this opinion.

Judgment reversed and a venire facias de novo awarded.