Samuel B. SLAUGHTER, Jr., Plaintiff,

v.

The PHILADELPHIA NATIONAL
BANK, Defendant and Third-
Party Plaintiff,

v.

PEOPLES NATIONAL BANK OF CAM-
DEN COUNTY, Third-Party Defendant.

Civ. A. No. 36421.

United States District Court
E. D. Pennsylvania.

Sept. 18, 1968.

Roger A. Johnson, Burton Spear, Philadelphia, Pa., for plaintiff.

Arthur R. Littleton, Philadelphia, Pa., for defendant.

Norman R. Bradley, Philadelphia, Pa., for third-party defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

In this case the jury returned a verdict in favor of plaintiff and against defendant, Philadelphia National Bank (hereinafter PNB) for $47,500 as compensatory damages and $35,000 as punitive damages, and in favor of PNB and against third-party defendant, Peoples National Bank of Camden County, New Jersey (hereinafter Peoples) for $41,250.

Motions for judgment notwithstanding the verdict or for a new trial were filed by both defendants. After argument, the motions for a new trial were withdrawn. Predicated upon irreconcilable inconsistent jury findings, the court, on its own initiative,[1] set aside the judgment and ordered a new trial. PNB and Peoples now move to vacate the court's opinion and request that we render a decision on its motion for judgment n. o. v. or to limit the new trial to the sole issue of agency.

## INCONSISTENCY OF VERDICT

A special written finding designated as 2(a) was submitted to the jury.[2] Their obligation was to determine if Peoples was the agent of PNB. The jury received instructions that liability could attach to Peoples only in the event that they found that the relationship of principal and agent existed. Their answer was in the negative. The jury, nonetheless, also found Peoples responsible in damages to PNB. (Finding 5). The verdict was perverse and clearly demanded the exercise of the court's authority to prevent a miscarriage of justice.

It is important to recognize that the verdict of this jury was controlled by Rule 49(a) and was not the equivalent of a general verdict pursuant to Rule 49(b). Decisive is the holding in Gallick v. Baltimore & Ohio R. R., 372 U.S. 108, 125, 83 S.Ct. 659, 668, 9 L.Ed.2d 618 (1963):

"[t]he fact is that the jury returned no general verdict for either party. * * * By undertaking to reconcile irretrievably conflicting findings of the jury * * *. (the court would have) invaded the province of the jury * * *. We would avoid such an intrusion by ordering that the cause be put to another jury".

Movant cites, Jones and Laughlin Steel Corp. v. Matherne, 348 F.2d 394 (5th Cir. 1965) to persuade us to attempt to reconcile the inconsistency previously illustrated. The distinction between the case at bar and *Jones* is that (*Jones*) was relevant to Rule 49(b), whereas the instant case is governed by Rule 49(a) and hence, to reconcile this jury's verdict would be tantamount to invading their province. In our view the perverse and inconsistent jury finding is dispositive

---

1. Fed.R.Civ.P. 59(d).

2. (see attached interrogatory)

for the granting of a new trial. However, persuaded by the fact that the inconsistency had no application to the cause of action wherein Slaughter was the plaintiff and relates solely to the action wherein PNB sought relief from Peoples, we will limit said new trial to all matters in issue existing between PNB as plaintiff and Peoples as defendant.

## MOTION FOR JUDGMENT N.O.V.

■ We now conclude that where motions for a new trial and judgment n. o. v. are filed that the parties to the action are entitled to the trial judge's decision on both motions. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L.Ed. 147 (1940); Mailloux Enterprises, Inc., and Merchants Wholesale Co., Inc. v. Fireman's Insurance Company of Newark, New Jersey, 366 F.2d 740, 742 (9th Cir. 1966).

In this action in replevin there are three sub-cases. The plaintiff is suing the defendant, PNB, on the theory that it wrongfully withheld his stock as collateral, and that he was damaged because of this wrongful retention by a drop in the value of the stock. Secondly, PNB asserted a claim against Peoples on the ground that PNB is entitled to indemnification from Peoples since whatever damage occurred, happened while Peoples had possession of the stock, and Peoples failed to apprise PNB of plaintiffs' claim although aware of same when it issued a certificate of participation to PNB. Finally an action between Peoples as plaintiff and Slaughter as defendant, predicated upon a debt alleged to be due to Peoples from Slaughter.

## SLAUGHTER v. PNB

On August 9, 1962, West Indies Company Limited, a Liberean corporation issued 38,000 shares of its common stock to plaintiff. There were four other individuals who also received 38,000 shares of common stock.

The five stockholders arranged a loan of $360,000 from a firm named Doll-Stevens Inc., and at various times executed the following documents:

(a) Series of promissory notes; (b) Pledge of their stock as collateral security; (c) Irrevocable power of attorney authorizing Doll-Stevens to take any action in respect of the pledged stock; (d) Judgment notes.

The pledge agreement, inter alia, provided that upon repayment or discharge of the loan, the pledged stock was to be returned to the pledgor.

The proceeds of the loan were then obtained by Doll-Stevens from Peoples, and the common stock, subject to pledge agreements, was assigned and the loan was placed on Peoples' books as loans to each of the stockholders. Subsequently, Peoples completed negotiations with PNB wherein, according to plaintiff's theory, a new loan was made to four of the stockholders and the plaintiff's obligation discharged. Defendant, PNB, to the contrary, argues that the taking of a new note for any existing debt did not affect the liability of Slaughter with regard to the original indebtedness. This dispute was decided by the jury in plaintiff's favor. We will analyze the testimony to determine if there was sufficient evidence to sustain the verdict.

■ Our opinion will be ruled by the law of New Jersey since the "center of gravity" of the various transactions occurred in that State. The Uniform Commercial Code was adopted in New Jersey in 1963. N.J.S.A. 12A: § 1–101 et seq., L.1961, c. 120, § 1–101 et seq. Section 3–601 enumerates the ways in which an individual may be discharged from liability on an instrument.

Our review of the testimony indicates that the jury concluded that the negotiations for the original loan were finalized in the early part of January, 1963. To secure the loan, plaintiff and four other borrowers executed joint and individual loans and pledged their stock. The pledge agreement provided, inter alia, that the stock was to be returned to pledgor in the event that the loan was repaid or discharged. It further specified that if payment was made within six (6) months, the principal amount would be reduced from $360,000 to $333,-

000. Thereafter, with the exception of plaintiff's notes, all others were recorded.

Within the six month period, demands were made for payment and were rejected. The debtors and their wives were requested to sign a new note. Plaintiff and his wife refused, but the others acquiesced and joined in signing a new note in the sum of $330,000. The judgments entered on the original indebtedness were satisfied and on the ledger cards of the bank a notation was entered reciting that the loan was paid in full. Plaintiff, declaring that the initial loan was to be regarded as paid demanded that Peoples comply with the terms of the pledge agreement and return his stock to him.

Defendants contend that the evidence falls short of establishing the necessary facts to enable the jury to properly find that plaintiff's liability was terminated. They strenuously contend that the giving of a new note for an existing or antecedent debt does not discharge the existing debt citing Pignone v. Brooks, 120 N.J.L. 258, 199 A. 372 (1938) and that the taking of a new note for a secured claim does not constitute the abandonment of the security posted as collateral for the old note. Union Cleaners & Dyers v. Zeidman, 113 N.J.L. 86, 172 A. 546 (1934). They also argue that under New Jersey law, unless a note is surrendered, or a written agreement executed indicating that the note is discharged, the obligation evidenced by that note still exists. In re Kirschenbaum Estate, 44 N.J. Super. 391, 130 A.2d 640, cert. denied, 25 N.J. 51, 134 A.2d 754 (1957).

■ The point advanced by the plaintiff is that from all of the facts, circumstances and conduct attending the securing of the new note the jury was justified in arriving at its conclusion that it was the intent of the parties to discharge the original debt. We subscribe to this view and it is our judgment that it is the intent of the parties as is determined by the facts and circumstances that is decisive of this issue. It was not a single act of the parties as was performed in *Pignone,* supra, (execution

of a renewal note) nor as in *Kirschenbaum,* supra, (the mere oral renunciation of a debt accompanied by retention of the note), but the aggregate acts of the parties that revealed their true intent. Whether a renewal note is accepted in payment is to be determined from the intent of the parties; Holden v. Farwell, Ozmun, Kirk & Co., 223 Minn. 550, 27 N.W.2d 641 (1947); which is to be determined by the facts and circumstances attending the transaction. Chase v. Gregory, 274 Mich. 32, 263 N.W. 789 (1935). The totality of all of the evidence is the true criteria to fix intent. In our opinion the jury's finding was amply supported by the evidence.

## DAMAGES

It is the further contention of PNB and Peoples that plaintiff has failed to establish any loss as a result of retention of its stock by PNB. Their argument that the proper measure of damages is the market value of the stock and that the only evidence produced by plaintiff involved book value which is an improper measure of the value of the stock must be rejected.

■ The general rule in an action for replevin, where the plaintiff has finally secured possession of the property, is that plaintiff may recover damages for the illegal detention of the stock. These damages are measured by the depreciation in the fair value of the property wrongfully held from the date of the demand to the date of the return. Armstrong & Latta v. City of Philadelphia, 249 Pa. 39, 94 A. 455 (1915); Ladner v. Forman and Friess, 107 Pa.Super. 245, 163 A. 359 (1932).

■ Normally, fair value would be determined by the fair market value which is the price that a willing buyer and a willing seller would agree upon in the marketplace at the relevant time. However, under the present situation, the stock is closely held, it is not listed on an exchange, and there has not been a sale of any of the stock from which a fair market value may be determined. Under these circumstances, the value of the

stock may be shown by evidence tending to show its intrinsic value. Lawton v. Strong, 249 F.2d 299, 301 (6th Cir. 1957); Heiner v. Crosby, 24 F.2d 191, 194 (3rd Cir. 1928); Stella v. Graham-Paige Motors Corp., 149 F.Supp. 390 (S.D.N.Y.1957), aff'd, 259 F.2d 476 (2d Cir. 1958), cert. denied, 359 U.S. 914, 79 S.Ct. 583, 3 L.Ed.2d 576 (1959); Flynn v. Zimmerman, 23 Ill.App.2d 467, 163 N.E.2d 568 (1960); Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442, 51 A.2d 759, 52 A.2d 177 (1947). To reason otherwise would be to preclude recovery in the absence of a market, and it does not necessarily follow that because there is no market, the stock is without value. Flynn v. Zimmerman, supra, 163 N.E.2d at 573. "While formulated rules relating to the appropriate measure of damage in varying circumstances have to some extent become fixed, they are by no means immutable but bend to the exigencies of the particular case in order that just compensation may be ascertained". Neuman v. Corn Exchange National Bank and Trust Co., 356 Pa. 442, 457, 51 A.2d 759, 766, 52 A.2d 177 (1947).

■ One of the factors to be considered in determining the intrinsic value is book value. Corry v. Passaic National Bank & Trust Co., 3 N.J.Super. 569, 67 A.2d 486 (1949); Lawton, supra; Stella v. Graham Paige supra; Neuman, supra. We are well aware of the dangers in using book value alone to establish a fair value or fair market value. See Oxford Paper Co. v. United States, 52 F.2d 1008, 1010 (Ct.Cl.1931); Shelby v. Texas Improvement Loan Co., 280 F.2d 349 (5th Cir. 1960). In a case where a plaintiff offers only an uncorroborated statement of the book value of the corporation as in Evans v. Armour and Company, 241 F.Supp. 705, 713–714 (E.D.Pa.1965) he may well not carry his burden of proof. We do not have this type of case before us.

The jury was presented with all of the financial and business circumstances of the corporation as well as the particular status of the shares in question to determine the fair value of the shares at the time of the demand by plaintiff. As previously noted, the shares were worthless when he finally regained possession. The plaintiff, who had been in the building business all of his life and who had experience in real estate and was familiar with the land holdings of the corporation which comprised a large part of the corporation's assets, testified that it was his opinion that his 38,000 shares were worth over $200,000 at the time in question. "By the great weight of authority the owner of personal property is qualified by his ownership alone to testify as to its value. * * * The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value". Lawton, supra, 249 F.2d at 302. An expert in real estate and appraisal work, familiar with property values in Antigua, testified as to the construction of the buildings, type of management and the overall value of the property holdings. A certified public accountant, whose firm had completed an audit of the corporation which made an independent investigation of some of the assets and based partially on the values of the appraiser, testified that at the time in question the corporate shares in issue were worth $224,960 or a book value of $5.92 per share. Evidence was also entered concerning the profits of the corporation which showed a net profit for 1962 followed by a net loss for the fiscal year of 1963.[3] Furthermore, the amount, nature, and possible effects of the corporation's debt structure were scrutinized. The status of the stock as minority shares was also considered. Of particular importance, was the restriction on the disposition of the stock as evidenced by the Buy-Sell Agreement. It provided a mandatory offer, prior to sale outside of the group, of any shares held by a member of the group who wished to dispose of them. The price, under the agreement, was fixed at $1.25 per share. The amount of damages awarded by the

---

3. See 29 Am.Jur.2d 442, § 390. Earning power is admissible to prove actual or intrinsic value.

jury seems to have been greatly influenced by this figure. The jury awarded damages of $47,500.00, the 38,000 shares owned by plaintiff computed at the $1.25 value. The jury was charged to consider all of the factors dealing with the intrinsic value of the corporation and not any one factor as being conclusive and returned a verdict which was approximately 20 percent of book value. It is our conclusion that the facts presented to the jury were sufficient for it to arrive at a proper conclusion with regard to an assessment of a fair market value.

■■■■■ Defendants next attack the validity of the jury's verdict for punitive damages. The well settled rule in an action for replevin is that exemplary or punitive damages will be allowed in cases where there have been particular circumstances of fraud, oppression, or wrong in the taking or the detention of the property. Armstrong & Latta v. City of Philadelphia, 249 Pa. 39, 45, 94 A. 455 (1915); Wiley v. McGrath, 194 Pa. 498, 45 A. 331 (1900); Ladner v. Forman and Friess, 107 Pa.Super. 245, 163 A. 359 (1932). The evidence must usually show that the "actual taking was attended by circumstances of 'outrage and oppression' comprising 'vindictiveness, wantonness, fraud, deceit, or real violence,' or that the detention was accompanied by 'vexation and oppression.'" Vitagraph Co. of America v. Swaab, 248 Pa. 478, 492, 94 A. 126, 131 (1915); accord, Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 197 A.2d 721, 4 A.L.R.3d 1450 (1964); Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355 (1963). "[I]t must be 'a rare case of misconduct' when exemplary damages are allowed in an action of replevin * * [and] where the evidence failed to show such misconduct, the court should not permit exemplary damages". *Vitagraph*, supra. After a thorough review of the record in this case, we find no evidence to support such damages. Plaintiff established that at the time he made a demand for the stock that he was entitled to its possession and that this demand was wrongfully refused. He then insti-

tuted this action and the stock was returned to him eight months after filing of the complaint at which time it was worthless. The evidence entitled plaintiff to a successful conclusion on his replevin action with attendant compensatory damages. However, the fact that a plaintiff is entitled to compensatory damages does not automatically confer upon him the right to receive punitive damages. It is not argued that there was any fraud, oppression or wrong in the taking of the stock. On the contrary, plaintiff voluntarily pledged the stock as collateral on the loan in which he was involved. The retention of the stock resulted from the belief that plaintiff was not discharged on the initial loan and was liable on the renewal note and the stock was being properly held as collateral. There was no evidence that the stock was held for any other reason except as plaintiff notes that the stock was returned when it was worthless and after suit was instituted. This fact alone does not constitute the outrageous behavior necessary to sustain an award for punitive damages. In our opinion, the plaintiff has failed to sustain the very considerable burden of proof imposed upon him to establish his right to an award for punitive damages.

### AMENDED ORDER

The judgment entered in favor of the Philadelphia National Bank as third-party plaintiff is set aside.

It is further ordered that a new trial is granted in the case of The Philadelphia National Bank, third-party plaintiff v. Peoples National Bank of Camden County, third-party defendant.

Finally, it is ordered that the defendant's motion for judgment, N.O.V. with respect to the judgment in the sum of $35,000, awarded to plaintiff as punitive damages is granted.

Defendant's motion for judgment N.O.V. in regard to judgment entered in favor of plaintiff for compensatory damages is denied.

Having disposed of the problems associated with inconsistent findings and the motion for judgment N.O.V. we

**240**

deny defendant's motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

It is so ordered.

### SPECIAL VERDICT PURSUANT TO RULE 49(a)

1. Did defendant Philadelphia National Bank have the legal right to retain plaintiff's stock as collateral security after it received the stock from Peoples' National Bank?

Yes _____ No __✓__

2. (a) While plaintiff's stock was in possession of People's National Bank, did defendant Philadelphia National Bank exercise control or have the right to exercise control over the stock sufficient to make People's its agent in this matter?

Yes _____ No __✓__

If your answer to Question 2(a) is "NO", please do *not* answer Question 2 (b), but go on to Question 3.

(b) If your answer to Question 2(a) is "YES", did People's National Bank have the legal right to retain plaintiff's stock as collateral security during the time the stock was in its possession?

Yes _____ No __✓__

3. If defendant Philadelphia National Bank had no legal right to retain plaintiff's stock as collateral (Question 1), or if People's National Bank was Philadelphia National Bank's agent (Question 2(a)) *and* had no legal right to retain plaintiff's stock as collateral (Question 2(b)), did plaintiff suffer any monetary loss from either bank's retention of his stock?

Yes __✓__ No _____

4. If your answer to Question 3 is "YES":

(a) in what amount do you find that plaintiff suffered damages from either bank's retention of his stock?

$ 47,500.

(b) in what amount, if any, do you find that plaintiff should be awarded punitive damages?

$ 35,000.

5. If your answer to Question 3 is "YES", in what amount, if any, do you find third-party defendant People's National Bank responsible to Philadelphia National Bank for plaintiff's damages.

$ 41,250.

6. In the counterclaim by third-party defendant People's National Bank against plaintiff Samuel B. Slaughter, Jr., in what amount, if any, do you find plaintiff liable?

$ NONE