T. F. PRIEST, Respondent, v. THE CONSOLIDATED TANK LINE COMPANY, Appellant.

Kansas City Court of Appeals, November 14, 1892.

Inspections: DUTY OF PETROLEUM INSPECTOR: FEES.   Where a coal-oil inspector is required to inspect such oil in large tanks or reservoirs, it is his duty to see such oil so inspected placed in the packages in

which it is intended to be sold, and the failure to see such oil so placed in such packages is a misdemeanor, and the inspector cannot recover his fees for his inspection, notwithstanding he made the inspection in bulk and afterwards branded the barrels in which it was placed.

*Appeal from the Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED.

*Henry Wollman*, for appellant.

*Martin & Terrell*, for respondent.

On the question of the manner of the inspection the lower court found the facts on appellant's theory of the law against the appellant, and that is a complete answer to the objection that the inspection was not done according to statutory requirements. *Swayze v. Bride*, 34 Mo. App. 414.

SMITH, P. J.—The petition in this case substantially alleges that on April 1, 1889, the plaintiff was duly appointed and qualified inspector of petroleum for the city of Moberly; that as such inspector it was his duty to have inspected and branded according to law the petroleum oil sold by defendant, and that at the request of defendant plaintiff did inspect and have inspected and branded for defendant according to law twenty-four hundred and twelve barrels of coal-oil; that by law plaintiff was entitled to twelve cents per barrel for each barrel so inspected and branded, making the total sum of $289.44, which defendant owed plaintiff.

The petition further alleged that a large proportion of such coal-oil was inspected by one Clarkson, formerly inspector for said city, which was occasioned in the following manner, to-wit: That when plaintiff was

appointed inspector of said city, and had qualified by taking the oath and giving the bond required by statute, the said Clarkson, who had been acting as such inspector, and whom plaintiff had been appointed to succeed, disputed plaintiff's title to the said office and emoluments, whereupon plaintiff and said Clarkson both commenced to inspect and brand oil for defendant, and did perform such inspection until the question of the legality of said appointment was brought before the courts of the state in a similar case, whereupon plaintiff and said Clarkson entered into an agreement, whereby Clarkson was to proceed to inspect and brand oil for defendant until the case then pending in the courts was disposed of, and if it was determined that plaintiff's appointment was legal, and he was to have said office, then the fees for inspecting and branding done during the time and until said litigation should be ended should belong to plaintiff, and that defendant was to make no payment of fees to Clarkson for inspecting and branding oils, until the determination by the courts as to the right of plaintiff to said office, and that the defendant assented to the agreement so made, and promised to hold such fees until such judicial determination, and then pay the same to the party entitled thereto; that the plaintiff was adjudged legally entitled to said office under and by virtue of his appointment and commission, etc.

The answer controverted all the allegations of the petition.

The uncontradicted evidence adduced at the trial showed that Clarkson refused to surrender the office of coal-oil inspector to the plaintiff until the decision by the supreme court of the case of *State ex rel. Withers v. Stonestreet*, 99 Mo. 361, and that the inspection and branding of the oil, for which compensation is claimed, was performed by Clarkson between the time the plain-

tiff was appointed to said office and that of the decision in the case just referred to. There is no evidence tending to show that the plaintiff inspected any oil for defendant, until after Clarkson surrendered the office. There is evidence to the effect that the plaintiff and Clarkson each put their brand upon fourteen barrels of the twenty-four hundred and twelve barrels for the inspection and branding of which compensation is claimed in this suit.

The uncontradicted evidence of the witness Clark shows how the inspecting and branding of the oil was performed by inspector Clarkson. He testified that, "when we received a tank on the cars, Clarkson would inspect the oil on the cars from a sample taken from the tank, and then I would draw off the oil so inspected into a tank in the yard; then when we made a sale I would draw the oil out of the yard tank into barrels, and Clarkson would come around in the morning and stamp the barrels. *He did not see me put the oil in the barrels, nor did he inspect the oil in the barrels themselves; he just made the inspection in the tanks.*" The evidence does not disclose that any of the oil, for which compensation is claimed in this suit for inspecting and branding, was inspected by Clarkson in any manner different from that stated by the witness Clark.

The defendant asked, and the court refused to give, among other instructions one which declared: "If the court sitting as a jury shall find that the oil in question or any part thereof was inspected in bulk in large tanks by plaintiff or Clarkson, and was afterwards drawn off into barrels without plaintiff or Clarkson seeing it so drawn off into said barrels, the said inspection is illegal as to that part of the oil so not seen drawn off into barrels, and plaintiff is not entitled to recover for the same in this action, although said

barrels may have been afterwards stamped with the stamping instruments of plaintiff or Clarkson." The judgment was for plaintiff, and defendant has appealed.

The decisive question in this case which we are obliged to decide is whether the plaintiff "did inspect and have inspected and branded" twenty-four hundred and twelve barrels of coal-oil, or any part thereof, as claimed in his petition, and whether compensation is given for the same by law. This question must be determined by reference to the provisions of the statute in relation to the duties and compensation of coal-oil inspector.

Section 5565 provides: "It shall be the duty of the inspector or his deputy, when called upon for that purpose by the owner, manufacturer of, or dealer in, any of the oils or fluids specified in the preceding section, to promptly inspect, gauge and brand the same within the city, town or county for which he is appointed. When the oil or fluid is contained in a barrel or other small package, he shall take the sample with which to make the test from the package to be inspected, gauged and branded, and in no case shall he mark or brand any package before inspecting the contents thereof in the manner herein prescribed. The fire test of said oils and fluids shall be determined in the following manner: The inspector shall use Tagla-bue's or other similar instruments. The oil cup shall be filled to within one-third of an inch of the brim with the liquid to be tested, the latter to be at a temperature of sixty degrees Fahrenheit, and the cold water in the water bath shall, as entirely as possible, surround said cup when it is in its proper position in the instrument. The flame used in heating the water bath shall be so graduated in size that the rise in temperature from sixty degrees Fahrenheit to the temperature of one

hundred and eighteen degrees Fahrenheit shall be, as nearly as practicable, two degrees per minute, and the size of the flame used when the temperature of one hundred and eighteen degrees Fahrenheit is marked shall be maintained until the test is complete. As soon as the temperature of one hundred and eighteen degrees Fahrenheit is marked by the thermometer, the flame shall be withdrawn from beneath the water bath, and the residual heat of the water be permitted to increase the temperature of the liquid being tested to one hundred and twenty degrees Fahrenheit; and at 'that point the first trial for a flash shall be made. The taper used for making the test shall be of oak, made as slender as possible, with a tip not exceeding one-sixteenth of an inch in thickness, or a minute jet of gas may be used instead of an oak taper; but in no case shall a taper or match with sulphur on it be used. The lighted taper or gas jet shall be passed over the surface of the liquid, and at such distance from the same as will determine the presence of any vapor. If no flash is obtained at the temperature of one hundred and twenty degrees Fahrenheit, the flame shall be replaced under the water bath, and the temperature raised to one hundred and twenty-three degrees Fahrenheit, when the flame shall be again withdrawn and the temperature of the liquid be allowed to rise to one hundred and twenty-four degrees Fahrenheit by the residual heat of the water, at which point a second attempt shall be made, as before, to obtain a flash. If no flash occurs, the test shall be repeated as often as the liquid gains four degrees temperature, three degrees with the flame under the water bath, and one degree with the flame removed, until a flash is obtained. Having obtained a flash at whatever temperature, successive flashes shall be obtained at intervals of four degrees, until the burning point of the liquid is determined, the

increase of temperature of four degrees being procured by keeping the flame under the water bath for three degrees, and removed for one degree, as aforesaid. All of said oils or fluids, which will, under said test, ignite and burn at a less temperature than one hundred and fifty degrees Fahrenheit, the inspector shall brand the package containing the same with the words, 'Rejected for illuminating purposes;' and all those which will not ignite and burn at a less temperature than one hundred and fifty degrees Fahrenheit, he shall brand with the words, 'Approved standard oil.' ''

Section 5566 provides: "The inspector shall, in addition to the brand provided for in the preceding section, affix his brand or device upon each package by him inspected, as aforesaid, designating, *first*, his name and the place and the date of the inspection, thus: '—— inspector of ——, ——, ——, 18—;' *second*, the fire test, thus: 'Ignited at—— temperature;' *third*, if the oil or fluid inspected has no fire test, then the specific gravity, thus: 'Specific gravity——;' *fourth*, the capacity of the package in gallons, thus: 'Gallons, ——;' and in addition to the foregoing the inspector shall affix his brand on all packages by him found on inspection to contain fluids that have no fire test, as aforesaid, with the words, 'Highly inflammable.' All oils or fluids, when once inspected, gauged and branded as aforesaid, shall not again be subject to inspection in this state."

Section 5567 provides that no petroleum oils, kerosene, gasoline or any product of petroleum by whatever name known, which under the test prescribed by said section 5565 ignite and burn at any temperature less than one hundred and fifty degrees Fahrenheit, shall be offered for sale or sold or used for illuminating and heating purposes within this state. Section 5568 provides: "It shall be the duty of the inspector, when requested so to do by the owner, or the person having

charge of the same, to inspect any of said oils or fluids specified in section 5564, contained in large tanks or reservoirs, by making a single test in the manner prescribed by this article:  *provided*, that the sample with which the test is made shall be taken from the top of the tank or reservoir; *and provided further*, that after making such inspection in bulk the inspector or his deputy shall see the oil or fluid so inspected placed in the packages in which it is intended to be sold, and shall properly gauge and brand said packages in the manner provided for." Section 5570 makes it a misdemeanor for an inspector or deputy inspector to fail to perform any of the duties imposed upon him by article 1, chapter 87, Revised Statutes, or in any manner to violate the provisions thereof.

It is further provided in section 5575: "Each inspector shall be entitled to demand and receive from the owner or person calling upon him to inspect, or for whom he shall make any inspection, fees at the following rates for inspecting or testing, gauging and branding said oils or fluids under this article, to-wit: For each barrel or larger package the sum of twelve cents; for each small package the sum of six cents; and when an inspection in bulk is made, in the manner provided in section 5568, the sum of twelve cents for each barrel or other package filled, gauged and branded according to the provisions of said section."

If Clarkson made the fire test of the oil in bulk as required in section 5565, and it was subsequently drawn off into packages such as barrels, then, before he could gauge and brand such packages, the statute enjoined upon him the duty, *either to see the oil so inspected placed* in the packages in which it was intended to be sold, or else test each package as required by said section 5565. It is conceded that this plain statutory duty was not performed either by the plaintiff or Clarkson. The omis-

sion of this official duty, which is so clearly established by the evidence, constituted a misdemeanor under the statute. Can the plaintiff recover compensation for official services so rendered as to be violative of the provisions of the statute? The performance of his official duties for such members of the public as had occasion to require them formed the consideration for which he was entitled to the compensation allowed by statute. While the right of his compensation is not the creation of contract, but that of law, still we think that the substantial performance of the service in the manner required by statute is a condition precedent to the right of compensation therefor. No reason is perceived why that just principle of the law of contracts, which forbids a recovery when there has been no performance of the contract according to its terms, should not apply in a case like this. *Harkness v. Briscoe*, 47 Mo. App. 197; *Fletcher v. Wagon Co.*, 35 Mo. App. 321; *Stout v. Tribune Co.*, 52 Mo. 342; *Earp v. Taylor*, 73 Mo. 617.

The allowance of a recovery of compensation for official services so perfunctorily performed, it seems to us ought to be forbidden by considerations of public policy. What evidence is the gauge and brand of the inspector that the package in which it is placed contains oil that will not ignite and burn at a less temperature than one hundred and fifty degrees Fahrenheit. What protection does it afford the consumer against the purchase of a dangerous and highly inflammable oil? It is obvious that the purpose of the legislature in enacting the several statutory provisions, referred to, was to protect the innocent public against the purchase and use of petroleum igniting and burning at a less temperature than one hundred and fifty degrees Fahrenheit. To uphold plaintiff's claim would be to pronounce null and void about the wisest and most salutary police regulation that could well be provided

by the state for the protection of the lives and property of its inhabitants. An inspection of the sort proved in this case leaves the door wide open for fraud and imposition on the public. It leaves it in the power of a producer, manufacturer or handler of petroleum oils to sell to the public, under the brand of "approved standard oil," an article that might ignite and burn at a less temperature that one hundred and fifty degrees. There was, so far as concerns the security of the public, no inspection at all. An inspection of this kind is no more than a travesty upon that prescribed by the statute. For these reasons, we think that neither Clarkson nor plaintiff should recover compensation for the official service performed for which this action is brought. The theory of the defendant's instruction was erroneously rejected by the trial court. In this view of the case it becomes unnecessary for us to consider the other points discussed in the briefs of counsel.

The judgment will be reversed. All concur.