UNITED HOSIERY MILLS CORPORATION *v.* IKE B. STEVENS, Secretary of State.

*(Knoxville.* September Term, 1921.)

1. **CORPORATIONS.** Application of manufacturing company to amend its charter to increase its capital stock and pay for it in profits held illegal and void.

in view of Constitution, article 11, section 8, providing that no cor· poration shall be created or its powers increased or diminished by special law, but organization of all corporations shall be provided for by general laws, and Shannon's Code, sections 2024· 2026, 2028, 2029, 2031a1, 2054, 2055, 2060a1, 2330, 2335, 2345, 2351, application by a manufacturing company to amend its charter, which contained the general powers enumerated in Shannon's Code, section 2076a1 et seq., and the provision of the General Corporation Act of 1875 (Shannon's Code, section 2335) that nothing but cash or land at a fair cash valuation shall be taken in payment for stock, and the provision of the act of 1881 (Shannon's Code, section 2351) for receiving an assignment of a patent in payment for stock, could only be made in the form prescribed by Shannon's Code, section 2028, and an application to amend, not only to increase its capital stock, but to grant it the right to pay for it in surplus and undivided profits, consisting of both tangible and intangible assets, was illegal and void, because the legis· lature has not granted it the right or power to thus pay for its stock. (*Post,* pp. 539-546.)

Acts cited and construed: Acts 1875, ch. 142, Acts 1881.

Code cited and construed: Secs. 2024-26, 2028, 2029, 2031a1, 2054, 2055, 2060a1, 2330, 2335, 2345, 2351, 2076a1, 2542-43.

Constitution cited and construed: Sec. 8, Art. 11.

United Hosiery Mills Corp. v. Stevens.

2. **CORPORATIONS.** Secretary of state is only authorized to register and certify a charter in form prescribed by statute.

The powers and duties of the Secretary of State with respect to registration of charters of incorporation and the certification thereof are purely ministered, and he is only authorized to register and certify a charter in the form prescribed by the statute. *(Post, pp.* 547-549.)

Cases cited and approved: Maine v. Butler, 130 Mass., 196; Stemple v. Bruin, 57 Fla., 173; Tasker v. Wallace, 6 Daly, 364; Priest v. Consolidated Tank Line Co., 51 Mo. App., 205; Henry v. Vermillion & A. R. Co., 17 Ohio, 187; Harvey-Watts Co. v. Worcester Umbrella Co., 193 Mass., 138; People v. Troy House Co., 44 Barb. (N. Y.), 625; Knox v. Childersburg Land Co., 86 Ala., 180.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.— HON. W. B. GARVIN, Judge.

MILLER & MILLER, for appellant.

FRANK M. THOMPSON, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

United Hosiery Mills Corporation is a corporation chartered and organized under the laws of Tennessee, and owns a large plant in the city of Chattanooga, and is engaged in the manufacture of hosiery, knit goods, yarns, etc.

Its original charter declared "the purpose of carrying on a general manufacturing business in cottons, woolens, silk, paper," etc., and granted "all powers conferred by

the laws of Tennessee upon mining and manufacturing corporations."

It also contained the general powers enumerated in Shannon's Annotated Code, section 2076a1 et seq.

It also contained the following provision of the General Incorporation Act of 1875 (Shannon's Code, section 2335):

"Nothing but cash shall be taken in payment of any part of the capital stock, or land at a fair cash valuation."

And the provision of the act of 1881 (Shannon's Code, section 2351), as follows:

"Any manufacturing company hereafter or heretofore incorporated may receive the assignment of any patent in payment of any stock subscribed to the amount of the value of said patent, as agreed on by the subscriber and the corporation."

Later said corporation's express powers were extended by amendment, whereby it was authorized and empowered to manufacture, sell, and deal in threads and yarns of all descriptions, and their products; including underwear and knit goods, and to this end acquire, erect, lease, and operate additional manufacturing establishments, and to purchase real estate, both improved and unimproved, in furtherance of the principal business of manufacturing, in which said corporation is now engaged; and for all other purposes reasonably incident or related thereto, such as erecting and maintaining homes for operatives and employees.

It increased its authorized and paid-in capital from time to time, until, in April, 1920, its capital stock was $2,500,000 of which $1,500,000 was common stock and the remainder of $1,000,000 was preferred stock. It had also

accumulated additional assets, tangible and intangible, which, when taken upon a fair cash valuation, exceeded its total liabilities more than $2,500,000, which was carried as "surplus" and tentatively invested in its business.

In May 1920, the stockholders of said corporation unanimously passed the following resolution:

"Whereas, the assets of this corporation, tangible and intangible, taken upon a fair cash valuation, exceed its total liabilities by more than two million five hundred thousand ($2,500,000) dollars; and

"Whereas, all the holders of common stock desire a paper showing in substance that they proportionately own common shares to correspond with such excess up to the amount of the sum certain named above, and are equitably entitled to such showing; and

"Whereas, it would be to the best interest of the corporation, its creditors and all common stockholders alike to keep its presently existing excess funds and assets active and in its business and to not convert them into cash or pay them out in the form of dividends:

"Therefore be it resolved:

"That authorization from the State of Tennessee be secured for an increase of the capital of this corporation, whereby its common stock is increased from one million five hundred thousand dollars to four million dollars (the increase being two million five hundred thousand dollars of common stock) and making a total of common and preferred stock of five million dollars, the same to become effective when so voted by the stockholders in adjourned or regular session and at such time and place as they may hereafter decide and authorize, but such increase of capital to be paid and provided for by the corporation's decreas-

ing its surplus and profits in an amount equal to the par value of the new issue of common stock and then distributing the new issue of common stock ratably among then holders of the pre-existing issue of common stock.

"Resolved further, that the board of directors be requested to apply for a corresponding amendment to the charter and to take all other necessary steps to effectuate this resolution according to its spirit and intent."

After this resolution was passed by the stockholders it was unanimously concurred in and approved by the board of directors of said corporation, and the solicitors of said corporation were directed to prepare an application to the State of Tennessee for an amendment to the charter of said corporation in accordance therewith, which amendment was prepared, probated, and registered in the register's office of Hamilton county, after which it was presented to defendant, as Secretary of State, to be recorded and certified by him in his office, accompanied by legal fees.

This proposed amendment was in words and figures as follows:

"Be it known that the existing charter of incorporation (and all amendments thereto) of United Hosiery Mills Corporation, which is a private corporation organized under the laws of Tennessee, with principal place of business at Chattanooga, is hereby further amended:

"First: To increase its authorized common capital stock from one million five hundred thousand ($1,500,000) dollars, as presently existing, to four million ($4,000,000) dollars (the increase being two million, five hundred thousand dollars [$2,500,000] of common stock).

"Second: All of said increase of stock to be divided into shares of the par or face value of one hundred dollars each when and as issued, and such increase of capital to be paid and provided for by the corporation's decreasing its existing surplus and profits ascertained on fair cash valuation of its assets in an amount equal to the par value of the total new issue of common stock, and the newly issued common stock to be distributed ratably among the existing holders of common stock of such date as the corporation may decide.

"We, the undersigned, comprising the board of directors of United Hosiery Mills Corporation, hereby apply to the State of Tennessee, by virtue of the general laws of the land, for an amendment to said charter of incorporation, for the purpose of investing said corporation with the authority and powers hereinabove set forth. This May 26, 1920."

Defendant, as said Secretary of State, entertained doubt as to the legality of said proposed amendment, and of his authority to accept, record and certify to the same in accordance with the law, and therefore referred the question of his duty in the premises to the Attorney General of the State.

The Attorney General advised the Secretary of State that said proposed amendment was illegal in that it undertook to authorize the issuance of $2,500,000 of common stock by said corporation, and to pay for same by decreasing the existing surplus and profits of said corporation, consisting of both tangible and intangible assets, which was contrary to law; the said corporation having the right to receive only money, land at a fair cash valuation, or patents to the amount of and value as agreed upon by

the subscriber and the corporation in payment of the proposed increase in said stock.

Thereupon the Secretary of State and said corporation entered into an agreed statement in writing containing the foregoing facts, and, in accordance with the statute, submitted their contentions to the chancery court of Hamilton county.

The two contentions submitted by the corporation are as follows:

"First: It is insisted by complainant that, as its assets, tangible and intangible, which are denominated in said resolution and proposed amendment as surplus and profits, amount to $2,500,000 more than its liabilities, it can issue under said amendment $2,500,000 of common stock and pay for the same by decreasing its said existing surplus and profits on a fair cash valuation of its assets to said amount, and distribute the said $2,500,000 of stock thus issued and paid for among the existing holders of its common stock.

"Second: That there is no statute in Tennessee which prohibits or forbids the said corporation from taking the action proposed and as shown in said resolution and said proposed amendment to its said charter, and further that said proposed action is in all respects lawful and permissible under the Tennessee laws and the decisions of her Supreme Court."

The issues submitted by the Secretary of State were as follows:

"Third: It is insisted by respondent, upon the other hand, that the said action, proposed by the said corporation, as disclosed in said resolution, and in said amendment, are forbidden by the laws of Tennessee and the public policy of the State; that all amendments to charters of

all corporations in Tennessee must be in the form set out in section 2028 of Thompson's Compilation of the Laws for 1919; that same must be registered and certified in the manner set out in sections 2029, 2029a, and 2542 of said compilation; and, further, that the said amendment must fix on its face the proposed increase of capital stock under section 2027a of said compilation; that said capital stock can only be issued and paid for in one of three ways: That nothing but cash can be taken and accepted in payment for any part of the same, or land at a fair cash valuation, or it may take patent rights at a fair valuation to be agreed upon by the subscriber and the corporation in payment for said stock.

"Fourth: That said resolution and said proposed amendment show upon their face that it is proposed to pay for said stock, not in money or cash or land at a fair valuation, or patent rights at an agreed price, but that the same was to be paid for in surplus and profits consisting of the tangible and intangible property of the corporation, in excess of its liabilities; that it disclosed a violation of the laws of Tennessee which prohibited your respondent from performing the ministerial duty of recording and registering the same, and thereby committing an illegal act."

The agreed statement then concludes thus:

"Therefore, the said complainant and respondent as the interested parties desiring a speedy settlement of the controversy and of the rights of the complainant to the said amendment proposed under the said resolution, and the duty of your respondent to record and certify the same, submit this agreed statement and invoke the judgment of this honorable court."

United Hosiery Mills Corp. v. Stevens.

The chancellor decreed that, by virtue of the statutes of the state, the corporation could not issue stock in the manner and form proposed, but was prohibited by statute from doing so, and that the Secretary of State was justified in his refusal to accept, record, and certify the amendment proposed by said corporation.

From this decree the corporation has appealed to this court, and has assigned errors.

It is insisted by appellant corporation:

First. That its assets, tangible and intangible, which are denominated in said resolution, and in said proposed amendment, as surplus and profits, amount to $2,500,000 more than its liabilities; that it can issue under said amendment $2,500,000 common stock and pay for the same by decreasing its existing surplus and profits on the fair cash value of its assets this amount, and distribute said $2,500,000 of stock thus issued and paid for, among the existing holders of its common stock.

Second. That there is no statute in Tennessee which prohibits or forbids said corporation from taking the action proposed and as shown in said resolution, and said proposed amendment to its charter, and further that said proposed action is lawful and permissible under the laws of this State.

Upon the other hand, it is insisted by appellee that said action proposed by said corporation, as disclosed in said resolution and said amendment, is forbidden by the laws of the State and its public policy; that all amendments to charters of corporations in this State must be in the form set out in section 2028 of Shannon's Annotated Code, and must be registered and certified in the manner set out in sections 2029, 2031a1, and 2542 of said Code; and, further,

that the said amendment must fix on its face the proposed increase of capital stock under section 2060a1 of said Code; that said capital stock can only be issued and paid for in one of three ways, to-wit: That nothing but cash can be taken and accepted for any portion of same, or land at a fair cash valuation, as provided by section 2335 of Shannon's Code, or it may take patent rights at a fair valuation to be agreed upon between the subscriber and the corporation in payment for said stock, as provided by section 2351 of said Code; that said resolution and the proposed amendment show upon their face that it is proposed to pay for said stock not in cash, or land at a fair cash valuation, or patent rights at an agreed price, but that the same is to be paid for in surplus and profits consisting of tangible and intangible property of the corporation in excess of its liabilities, in violation of the laws of the State, and for appellee to have certified and registered said amendment it would have been an illegal act.

Section 8 of article 11 of our Constitution provides as follows:

"No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed, and no such alteration or repeal shall interfere with or divest rights which have become vested."

By section 2024 of Shannon's Code it is provided: "Private corporations may be formed and charters obtained for them in the manner and for the purpose as hereinafter provided."

United Hosiery Mills Corp. v. Stevens.

Section 2025 provides: "Five or more persons, over the age of twenty-one, desiring to form a corporation for any of the purposes in this chapter mentioned, shall copy the form of charter adapted to the purpose, filling the necessary blanks, and appending to the same an application in these words: 'We, the undersigned, apply to the State of Tennessee, by virtue of the laws of the land, for a charter of incorporation, for the purposes and with the powers declared in the foregoing instrument.' "

Section 2026 provides: "The said instrument, when probated as hereinafter provided (in section 2542), with application, probates, and certificates, is to be registered in the county where the principal office of the company is situated, and also registered in the office of the Secretary of State as required (in section 2543) for corporations for purposes not for individual profit; and a certificate of registration given by the Secretary of State, under the great seal of the State, shall, when registered in the register's office of said county, with the *fac simile* of said seal, complete the formation of the company as a body politic; and the validity of the same in any legal proceeding shall not be collaterally questioned."

Section 2542 provides: "The signatures of said five or more corporators must be acknowledged, or any one or more signatures proved by one witness, before the clerk of the county court; the fact of acknowledgment or probate to be entered on the books of his office, and also certified on the instrument, which instrument, with the application, the acknowledgment or probate, shall be registered in the register's office of the county where the main business of the corporation is to be conducted, the fact

of registration to be by the register indorsed on or attached to said instrument."

Section 2543 provides: "The said instrument, registered as aforesaid, shall then be transmitted to the secretary of State, who shall copy the same in a book to be kept for that purpose, with the probates, acknowledgments, certificates of clerk, register, etc. The Secretary of State shall then certify, in the original instrument, that the same has been registered in his office, to which certificate shall be affixed the great seal of the State; and, upon the fixing of the great seal of the State to said certificate or said original instrument, and the registration of said secretary's certificate, and the *fac simile* of said seal in the register's office, where said instrument was originally registered, the formation of the association as a body politic and corporate is hereby declared complete, and the validity of the same shall not be, in any legal proceeding, collaterally impeached."

The general powers of all corporations, as contained in chapter 142 of the Acts of 1875, are set forth in section 2054 et seq.

Section 2055, subsec. 3, provides: "The corporation may, by by-laws, make regulations concerning the subscription for, or transfer of, stock; fix upon the amount of capital to be invested in the enterprise, the division of the same into shares, the time required for payment thereof by the subscribers for stock, the amount to be called at any one time; and, in case of failure of any stockholder to pay the amount thus subscribed by him, at the time and in the amounts thus called, a right of action shall exist in the corporation to sue said defaulting stockholder for the same."

This provision was amended by later acts, which are compiled, at section 2060a1 which is as follows:

"All persons applying to the State of Tennessee for any charter of incorporation to be organized for profit shall fix in the charter applied for the amount of the capital stock of the proposed incorporation, which shall in no case be less than one thousand dollars; and any corporation already chartered or that may hereafter be' chartered making application for an amendment to its charter shall on such amendment fix the proposed increase of the capital stock, and no corporation now or hereafter created shall increase its capital stock except by an amendment to its charter, which amendment shall be .made in the manner now or hereafter provided by law."

Pursuant to this last quoted section the legislature proceeded to provide an exact method by which amendments to such charters granted before the Constitution of 1870 was adopted, and this method appears in section 2028 of Shannon's Annotated Code, and is as follows:

"Any corporation heretofore (before the adoption of the Constitution of 1870, on May 5, 1870) chartered by an act of the General Assembly, which may desire to change its name, increase its capital stock, or obtain any powers granted herein, shall have the right to do so, by the board of directors of said corporation copying said amendment, and making an application in these words:

" 'We, the undersigned, comprising the board of directors of (here insert the name of the corporation), apply to the State of Tennessee, by virtue of the general laws of the land, for an amendment to said charter of incorporation, for the purpose of investing said corporation with the power (here state the clause in the general law afore-

said, which is desired as an amendment, or if it be simply to change the name, so state the fact). Witness our hands, the —— day of ——.' (To be signed by the directors.)"

Section 2029 of said Code is as follows: "This instrument shall be probated or acknowledged as hereinafter provided (in section 2542), and the certificate of registration given by the Secretary of State, under the great seal of the State, shall complete the amendment to said incorporation, and the validity thereof shall not, in any legal proceeding, be collaterally questioned."

Then the legislature, by the amendatory acts of 1897 and 1907, provided a method by which charters could be amended, and the capital stock of corporations organized under the act of 1875 could be increased. These amendatory acts appear in section 2031a1 of Shannon's Annotated Code, which is as follows:

"The stockholders, or the directors in case there are no stockholders, of any corporation, organized under a charter obtained under the provisions of this chapter, or organized under a charter obtained under any amendatory or subsequent act, who may desire to change the name of such corporation, increase its capital stock, or obtain any power granted either by this chapter, or by any amendatory or subsequent act, shall have the right to do so under and in the manner provided by section 2028 and 2029, which provides for the amendment of charters granted by the legislature, and with the like effect as therein provided; provided, this section shall in no way apply to or affect corporations where suits have already been brought to declare their charters void, and shall have no effect on any kind of litigation or suits now pending against such corporations, for any purpose."

It will be noted from the provisions of these various sections that all corporations are required to use the forms of charters prescribed for the particular business which they propose to transact, and that, since the passage of section 2020a1, they are required, in their original charters, to state the amount of capital stock, and, if it is desired, since the passage of the act incorporated in said section, to increase their capital stock, they can only do so by an amendment which must state on its face the amount of the proposed increase. By comparing section 2028 with section 2031a1 it will be noted that such amendments for an increase of the capital stock must be in the form prescribed by section 2028; that it must not only be in the form prescribed in said section, and state the amount of the increase, but it must be in the language of said form, and be recorded as prescribed by subsequent sections, and no latitude whatsoever is given. This is true because the legislature alone can grant this power, and, further, it could not delegate the power either to the stockholders of the corporation or its directors to exercise at will, or to the Secretary of State.

The General Incorporation Act of 1875 set out the form of charters for manufacturing companies, which appears at section 2330 and subsequent sections of Shannon's Annotated Code. And one of the restrictions placed upon their powers appears at section 2335 of said Code, and is as follows:

"Nothing but cash shall be taken in payment of any part of the capital stock, or land at a fair cash valuation, and no loan of money shall at any time be made to any stockholder thereof, and any such loan shall render the directors consenting thereto individually liable for the amount

thereof, this liability to extend in favor of innocent stockholders as well as creditors."

By the act of 1881 this section was amended by prescribing the form for manufacturing corporations, and giving them additional powers and imposing upon them additional restrictions. This action appears at section 2345 of Shannon's Annotated Code and subsequent sections.

By section 2351 of Shannon's Annotated Code, which is a part of the third section of the act of 1881, it is provided:

"Any manufacturing company hereafter or heretofore incorporated may receive the assignment of any patent in payment of any stock subscribed to the amount of the value of said patent, as agreed on by the subscriber and the corporation."

It will thus be noted that, under the original act of 1875, as well as the amendatory act of 1881, manufacturing companies, such as the complainant is, can only receive in payment for their stock money, or land at a fair cash valuation, or patent rights at a price agreed upon between the subscriber and the corporation. It will further be noted from the agreed statement of facts that the charter of appellant embodied these clauses, placing upon it these restrictions, in issuing and receiving payment for its stock. It will further be noted that both the application and resolution adopted by the stockholders of appellant failed to disclose that the surplus and undivided profits of $2,500,-000, with which appellant proposed to pay for its stock consisted of either money, land at a fair cash valuation, or patent rights, the price of which had been agreed upon between it and the proposed subscribers of said stock.

We are of the opinion, therefore, that the amendment which appellant sought to have made to its charter could only be made in the form prescribed by section 2028 of Shannon's Annotated Code, and that said application must follow substantially the language of said form. This being true, and the application made by appellant, proposing, as it did, to not only increase its capital stock to $2,500,000, but to grant to it the right to pay for it in surplus and undivided profits, consisting of both tangible and intangible assets, was illegal and void, because the legislature has not granted to it the right or power to thus pay for its stock. Nor has it delegated to the Secretary of State the power to grant to appellant the power to pay for the proposed increase in this manner. The powers and duties of the Secretary of State with respect to the registration of charters of incorporation, and the certification thereof, are purely ministerial, and, this being true, he is only authorized to register and certify a charter in the form prescribed by the statute.

In *Maine* v. *Butler,* 130 Mass., 196, it was held that, where the statute provides that "nothing but money shall be considered as payment of any part of the capital stock," a part payment cannot be made by a transfer of patents.

In *Stemple* v. *Bruin,* 57 Fla., 173, 49 South., 151, it was held that, where the charter of a corporation provides that its capital stock shall be paid in cash, except that one-half or less might be paid in property, labor, or services, a subscriber cannot pay for shares by the transfer of a patent.

And it was held in *Tasker* v. *Wallace,* 6 Daly (N. Y.), 364, that payment in patent rights of unascertained value was not a payment in money.

In *Priest* v. *Consolidated Tank Line Co.*, 51 Mo. App., 205, it was held that, where the consideration for stock of a new corporation was worthless stock of an old company, it was held insufficient, and the court said that it was doubtful if the stock could be paid for in any other way than by cash, where the statute seemed to provide for payment "in lawful money of the United States."

In *Henry* v. *Vermillion & A. R. Co.*, 17 Ohio, 187, it was held that payment of stock subscriptions in goods, or otherwise than in money, could not be made where the charter contemplated payments in money. ·

In *Harvey-Watts Co.* v. *Worcester Umbrella Co.*, 193 Mass., 138, 78 N. E., 886, it was held that a payment in cash was not shown where the corporation agreed to buy property from a subscriber of stock at an amount equal to his subscription, and the subscriber borrowed this amount from a bank, paid it to the corporation for his shares, and the corporation then gave him its check in payment for the property which he conveyed, and he repaid the bank with the check received from the corporation, the statute in force requiring that, in cases of transfer of property for stock, a statement relative to the property should be filed with the secretary of the commonwealth.

In *People* v. *Troy House Co.*, 44 Barb. (N. Y.), 625, it was held that a transfer of real estate will not satisfy a provision that "nothing but money shall be considered as payment of any part of the capital stock" of the corporation.

In *Knox* v. *Childersburg Land Co.*, 86 Ala., 180, 5 South., 578, it was held that an agreement to take shares in a corporation to be thereafter formed, in consideration of a conveyance of land to the corporation, will not be decreed

where the statute provides that subscriptions "must be payable in money," although it is provided that the commissioners may allow it to be discharged in property or the performance of work or services.

We find no error in the decree of the chancellor, and it is affirmed, with costs.