SEBEUS C. MAINE *vs.* BENJAMIN F. BUTLER & others.

Suffolk.   March 4, 1880. — Jan. 7, 1881.   ENDICOTT & SOULE, JJ., absent.

The owner of letters patent made an agreement with the defendants, under seal, by the terms of which, in consideration of $10,000 paid to him by the defend- ants, "in the manner herein set forth," he assigned to them his letters patent, and they agreed with him to form a corporation or corporations in the District of Columbia or elsewhere to put the inventions into use; to convey to him fifteen thirty-seconds of the capital stock of said corporations as fully paid up stock; to pay to him, as soon as said corporations, or either of them, should be organized, seventeen thirty-seconds of $10,000; that he should put in fifteen thirty-seconds of said $10,000, "the remainder of the consideration aforesaid," towards the working capital; and that they should put in seventeen thirty- seconds of $10,000 as their share of the working capital. *Held,* that this agreement contemplated the formation of a corporation of which the real capi- tal stock should consist of $10,000 in money, and of the patents estimated at $10,000. *Held, also,* if the law of the place where the parties attempted to organize a corporation provided that a corporation should be dissolved unless the capital stock should be paid in within a certain time, and that nothing but money should be considered as payment of any part of the capital stock, that the scheme contemplated by the agreement was illegal; and that the owner of the letters patent could not maintain an action on the agreement for the fail- ure of the defendants to complete the organization of the corporations and to convey to him his proportion of the capital stock.

MORTON, J.   This is an action of contract upon an agree- ment under seal, by the terms of which the plaintiff, as the party of the first part, in consideration of $10,000 paid to him, "in the manner herein set forth, by or in behalf of the parties of the second part," assigns to the defendants all his right under certain letters patent held by him.   The defendants as parties of the second part agree that they will form a corporate com- pany or companies in the District of Columbia or elsewhere for the purpose of perfecting and putting in use the inventions of the plaintiff; that they will convey to the plaintiff fifteen thirty- seconds of the capital stock of said companies as fully paid up stock, so that the plaintiff "shall become full, complete and true owner of fifteen thirty-second parts of all the stock in said companies;" that they will pay the plaintiff, "as soon as said corporations, or either of them, shall be organized, seventeen thirty-seconds of $10,000 in cash, and that he shall put in fifteen thirty-seconds of said $10,000, the remainder of the considera- tion aforesaid in said corporate company, towards the working capital thereof; and the said parties of the second part shall put

in seventeen thirty-seconds of $10,000 into said company as and for their share of the working capital thereof." They also agree that they will, after the organization of the company, use said working capital to procure a suitable shop and materials; and that the corporation shall employ the plaintiff, and pay him for the first year a sum not less than $5000 " from the first profits of said corporation."

The plaintiff alleges in his declaration that the defendants have failed to form and organize a corporation, and to convey to him his proportion of the stock, as required by the contract; and that, though the plaintiff, in anticipation of the formation of such corporation, has rendered services and expended money as the general manager of the defendants, they have not paid him the sum of $5000 a year, as agreed by them, or any sum. These are the only breaches of the contract alleged by the plaintiff.

It seems to us clear that this contract contemplated that the defendants should form a corporation in the District of Columbia, of which the real capital stock should consist of $10,000, to be paid in cash by the parties, called the " working capital," and of the patents, estimated at $10,000. There is no provision that the defendants are to pay in cash anything more than their share of the working capital. If the parties understood that the defendants were to pay in cash all of the capital stock of the corporation, over and above the amount to be paid in by the plaintiff, there would be no occasion for this express provision that they should pay in seventeen thirty-seconds of the working capital. The fair construction of the contract is that adopted by the justice who presided at the trial, that all the capital stock of the company to be formed under it, except the working capital provided for in the contract, was to be paid in by the transfer of the patents to the company.

It appeared at the trial, and was not controverted, that, in 1872, the defendants Spofford and Smoot and the plaintiff and others proceeded under the contract to organize a corporation in the District of Columbia, with a nominal capital of $100,000, divided into shares of fifty dollars each. The corporation met and elected officers, electing the plaintiff a director and the general manager. The acts of Congress applicable to the District of Columbia provide that a corporation thus organized shall be

dissolved, unless the capital stock fixed and limited shall be paid in, one half within one year, and the other half within two years from the incorporation of such company; and that "nothing but money shall be considered as payment of any part of the capital stock." U. S. St. May 5, 1870. Under this state of the law, the defendants could not proceed to cause the corporation to issue certificates of stock without being guilty of an illegality and a fraud. The plaintiff contends that the contract required them to pay in the balance of the capital as fixed over and above the $10,000 paid in as working capital. But, as we have before said, this was not what the parties understood or intended. They contemplated that a corporation should be organized, the capital stock of which was to be paid by $10,000 in money, and the balance by the patents. The difficulty with the plaintiff's case is that this scheme is illegal. The defendants proceeded in the performance of the contract so far as they lawfully could. With the participation of the plaintiff, they caused to be organized a corporation, to which they transferred the patents. Fifteen thirty-seconds of the capital stock belonged to the plaintiff, and he has not been disturbed in the enjoyment of it. *Field* v. *Pierce*, 102 Mass. 253. If a full compliance with the terms of the contract required the defendants to cause to be issued to the plaintiff certificates of stock, the provision of the contract thus requiring stock to be issued upon the basis intended by the parties required an illegal act, and the law will not aid the plaintiff to enforce an illegal contract.

The other breach assigned by the plaintiff is not supported by any evidence. The contract does not provide that the defendants are to pay the plaintiff for services or expenses in anticipation of the formation of a corporation, and there was no breach of the agreement that he should be paid $5000 for the first year "from the first profits" of the corporation, because it is admitted that there were no profits.

Upon the construction we have given to the contract, it follows that, upon the uncontroverted evidence in the case, the plaintiff cannot maintain his action; and the judge rightly directed a verdict for the defendants. *Judgment on the verdict.*

*A. A. Ranney & J. H. Benton, Jr.*, for the plaintiff.

*W. Gaston & J. C. Coombs*, for the defendants.