WILLIAM J. HUSHION vs. JAMES E. McBRIDE & others.

Worcester.    September 21, 1936. — November 9, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract,* Construction, Parties, Validity.    *Corporation,* Promotion.
    *Joint Obligation.   Equity Pleading and Practice,* Amendment, Demur-
    rer.    *Agency,* Undisclosed principal.    *Husband and Wife.    Equity
    Jurisdiction,* Specific performance.

An agreement in writing, signed by a husband acting as agent for him-
    self and his wife, jointly interested in an enterprise called a syndicate
    in which they had a controlling interest, promising, to one becoming
    a member thereof by investing certain assets therein, that a corpora-
    tion would be organized and that, "when the said assets are' trans-
    ferred to the said Company," the investor would be entitled to a
    fifteen per cent interest in its capital stock in exchange for his share
    "in the above mentioned assets," intended individual liability and
    could be enforced against the husband and wife.
The allowance of an amendment to a bill in equity after the filing of a
    report by a master, in order to make the allegations in the bill con-
    form to the facts found, was an adjudication that the bill as thus
    amended stated the same cause of suit that the plaintiff sought to
    present by the bill before it was amended, and was proper.
An appeal from the overruling of a demurrer to a bill in equity was not
    considered where it appeared that the defendant had demurred to a
    bill substituted therefor on all the grounds that were common to the
    two bills and had not appealed from the overruling of the later de-
    murrer.
If a husband and wife were jointly interested in and controlled an enter-
    prise for which they sought capital, and the husband, in his own name,
    but on behalf of the enterprise, accepted an investment and made an
    agreement with the investor as to what he would receive therefor,
    such agreement might be enforced against both the husband and the
    wife as joint principals, whether or not disclosed as such.
The incapacity of a husband and wife to contract with each other does
    not affect the validity of a joint promise made by them to a third
    person.
A joint promise to transfer shares in a corporation to be later organized
    may be enforced specifically against any of the promissors holding
    enough shares.

BILL IN EQUITY, filed in the Superior Court on December
7, 1934, and afterwards amended as stated in the opinion.

The suit was referred to a master. The demurrer to the second substituted bill described in the opinion was upon all the grounds common to that and the previous substitute bill; and there was no appeal from the overruling of that demurrer. Other action by *Broadhurst,* J., upon certain motions to amend and demurrers, and a final decree entered by his order, are described in the opinion. The defendants appealed.

The case was submitted on briefs.

*F. P. Ryan, R. Henry, & S. Perman,* for the defendants.

*J. C. McDonald & M. J. Rubin,* for the plaintiff.

LUMMUS, J. The individual defendants James E. McBride and Margaret A. McBride, hereinafter called simply the defendants, are husband and wife. He is financially irresponsible. In 1933 they promoted a distilling corporation. The master finds: "All the cash which ever went into the enterprise was the money of Margaret A. McBride, invested by her in part for the purpose of making her husband, James E. McBride, the executive of an industry, and in part as an investment for pecuniary returns. By virtue of the fact that the McBrides were furnishing all the money, they controlled the whole promotion of the enterprise, including the doings of the promoters or so called 'syndicate.' They also overwhelmingly controlled the corporation afterwards organized. . . . All the capital for this enterprise, from its beginning, has been furnished by the defendant, Margaret A. McBride. . . . I find that whatever the defendant James E. McBride did at the meetings of the promoters and throughout the entire course of the events involved in this suit was done with the authority of his wife, the defendant Margaret A. McBride, and whatever she did was done with the authority of her husband; that all that was done by both or either was done as a common undertaking between them."

Real estate in Clinton, Massachusetts, was acquired by James E. McBride early in the promotion, placed in the name of a straw holder, and subsequently turned over to the corporation to be used as a distillery. The plaintiff held an option to buy for $20,000 an overdue corporate

mortgage upon which about $24,000 was due, covering a distillery, land, buildings and machinery in Canada. He turned this option over to James E. McBride, prior to August 23, 1933, as his contribution, in addition to his continuing services, towards the promotion. It was hoped that at a foreclosure sale the entire property in Canada could be bought for the amount of the mortgage. It was orally agreed that the plaintiff, for his option and his services, should receive fifteen per cent of the capital stock of the proposed corporation. On October 7, 1933, James E. McBride signed and delivered to the plaintiff a writing stating that the plaintiff "is to share to the extent of 15% in company we propose forming." Two days later, at the suggestion of an attorney, James E. McBride signed and delivered to the plaintiff another writing stating that "you [the plaintiff] are to have a 15 per cent. interest in all the assets of a Syndicate in which I have a controlling interest. . . . It is further understood that the syndicate will cause to be incorporated a distillery company . . . and when the said assets are transferred to the said Company . . . you shall be entitled to a 15 per cent. interest in its . . . capital stock in exchange for your share of the above mentioned assets."

James E. McBride bought the Canadian property at foreclosure sale for $43,000, which left a surplus of about $19,000 for the mortgagor. The machinery and equipment of the Canadian plant, worth if new about $135,000, together with a considerable stock of whiskey, were removed to Clinton. Shares in the new corporation to the number of eighty-two thousand two hundred twenty-three were issued to Margaret A. McBride, for the Clinton and Canadian properties turned over to the corporation. In addition, twenty-one thousand six hundred forty-four shares were issued to her for cash, two thousand shares were issued to one Speirs for services, and nineteen thousand shares were issued to "James E. McBride, Trustee" for the services of the promoters. The master finds that the enterprise is speculative, and that it is impossible to place a value upon the shares.

The plaintiff in his bill as finally amended sought specific performance by the transfer to him by the defendants of fifteen thousand five hundred eighty shares. Two motions for amendment with substitute bills were allowed after the suit was referred to the master. The first was filed during arguments before the master and the parties agreed that the arguments might proceed as though that amendment had been allowed. The second amendment was filed and allowed after the master's report was filed. The defendants appealed from both orders allowing the amendments. They also demurred to both substitute bills and appealed from the overruling of their demurrer to the first substitute bill. They did not appeal from the decree overruling their demurrer to the second substitute bill.

A final decree was entered, from which the defendants appealed, giving costs against the individual defendants and ordering the defendant Margaret A. McBride to transfer to the plaintiff twelve thousand three hundred thirty-three shares, which is fifteen per cent of the eighty-two thousand two hundred twenty-three shares issued to Margaret A. McBride for the Clinton and Canadian properties acquired by James E. McBride as a part of the promotion and subsequently turned over to the corporation.

The defendants contend that the writings signed by James E. McBride in October, 1933, did not bind them or either of them personally. But the wholly unborn corporation could not be bound by a prenatal contract. *Abbott* v. *Hapgood*, 150 Mass. 248, 252. *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, 233, and cases cited. The defendants dominated the situation. They had taken from the plaintiff the option which he held, and had left him with no means of obtaining stock directly from the proposed corporation. The natural conclusion is that individual liability was intended. *Mansfield* v. *Lang*, 293 Mass. 386, 391.

But the defendants say that the corporation which was formed is not the corporation in which the plaintiff was promised an interest of fifteen per cent. It is true that about September 17, 1933, the promoters expected that

the cash capital "at first to be invested was to be in the sum of $50,000, of which the McBrides were to furnish $25,000" and one Soulliere $25,000. But Soulliere was soon after eliminated, and it became apparent that a larger cash investment was necessary. These changes occurred before James E. McBride signed the writings in October, 1933. No proposal to change the share or rights of the plaintiff was thereafter made. The contention of the defendants, if sound, would deprive the plaintiff of his valuable option as well as his valuable services, without compensation. We think that under his contract the plaintiff has a right to shares in the corporation which was subsequently formed, the defendant Clinton Distilleries Corporation. The case differs from *Maine* v. *Butler*, 130 Mass. 196, where the plan expressly called for a cash investment of only $10,000, and that plan was illegal.

The defendants contend that the judge had no right to allow an amendment to the bill, after the report of the master had been filed, for the purpose of making the allegations conform to the facts found after full hearing. But that is a proper and common purpose. *Bourbeau* v. *Whittaker*, 265 Mass. 396, 400. *Blume* v. *Oil-O-Chron, Inc.* 287 Mass. 52, 54. *Giles* v. *Giles*, 293 Mass. 495, 499. *Lane* v. *J. W. Lavery & Son, Inc.* 294 Mass. 288. If there ever existed any doubt that the amended bill states the same cause of suit that the plaintiff intended to present in the first place, it was resolved by the decision allowing the amendment, and nothing in the record discloses any error of law or fact in that decision. G. L. (Ter. Ed.) c. 231, §§ 51, 144. See also § 138. *Bucholz* v. *Green Bros. Co.* 290 Mass. 350, 354.

We see no cause for considering the demurrer to the first substitute bill. Even if, as the defendants contend, that demurrer was well founded, it ceased to have importance upon the allowance of the later amendment. See *Cronan* v. *Woburn*, 185 Mass. 91, 95; *Cole* v. *Wells*, 224 Mass. 504, 512.

Lastly, the defendants contend that the decree for specific performance was not proper under the amended bill and

the findings of the master.   No plain, adequate and com-
plete remedy at law existed.   Neither the amended bill nor
the decree is based on the theory that James E. McBride
was merely agent for his wife, and acted in no other capac-
ity.   If that were the fact, the plaintiff might be put to his
election, even if the wife were an undisclosed principal,
and could hold either liable upon the contract but not
both.   *Weil* v. *Raymond,* 142 Mass. 206, 213.   *Gavin* v.
*Durden Coleman Lumber Co.* 229 Mass. 576, 579, 580.
*Marsch* v. *Southern New England Railroad,* 230 Mass.
483, 499.   *Maynard* v. *Fabyan,* 267 Mass. 312.   Compare
Williston, Contracts (Rev. Ed.) § 289.

The finding is that James E. McBride was more than
agent; he was also one of the principals.   Assuming that
the principals should be classed as undisclosed (Williston,
Contracts [Rev. Ed.] §§ 283, 287, 288), undisclosed prin-
cipals are liable jointly although the agent happens to be
one of them.   *Ruppell* v. *Roberts,* 4 Nev. & Man. 31.   *Lull*
v. *Anamosa National Bank,* 110 Iowa, 537, 542.   *Coaling
Coal & Coke Co.* v. *Howard,* 130 Ga. 807.   *Tew* v. *Wolfsohn,*
174 N. Y. 272, 278.   Where active members of a firm con-
tract in writing in their own names, but in reality for the
firm, they and all undisclosed or dormant partners become
jointly liable.   *Robinson* v. *Wilkinson,* 3 Price, 538.   *Beckham*
v. *Drake,* 9 M. & W. 79.   *Drake* v. *Beckham,* 11 M. & W. 315,
317.   *Brett* v. *Beckwith,* 3 Jur. N. S. 31.   *Whitwell* v. *Perrin,*
4 C. B. (N. S.) 412.   *Bottomley* v. *Nuttall,* 5 C. B. (N. S.)
122.   *Court* v. *Berlin,* [1897] 2 Q. B. 396.   *Mail Printing
Co.* v. *Devlin,* 17 Ont. 15.   These cases are referred to in
Lindley, Partnership (10th ed.) 238, 239, as illustrations of
the doctrine of undisclosed principal.   In *Gage* v. *Rollins,*
10 Met. 348, where a firm consisting of four persons made
a written contract as agents for an undisclosed firm con-
sisting of those four persons and another, it was held that
in law all five were joint parties to the contract.   In *Marsch*
v. *Southern New England Railroad,* 230 Mass. 483, 499,
which was decided on demurrer, the decision sustaining the
demurrer rested upon the attempt of the pleader to hold
the agent in his capacity of agent as well as in his capacity

as one of the principals, and it was said in the opinion that the agent "could have been sued jointly as principal with the other defendants as principal."

If, on the other hand, James E. McBride and his wife be regarded as disclosed principals, the result is the same. His signature is to be interpreted as binding the known principals, including himself. *Reiman* v. *Hamilton*, 111 Mass. 245. *Byington* v. *Simpson*, 134 Mass. 169. *Elwell* v. *State Mutual Life Assurance Co.* 230 Mass. 248, 253. Williston, Contracts (Rev. Ed.) § 281.

The maintenance of the bill against both defendants is not precluded by the fact that they are husband and wife. In *Reiman* v. *Hamilton*, 111 Mass. 245, 247, where a husband was master of a vessel owned by himself and his wife, it was held that his contract in that capacity bound both jointly. The court said, "It is not a case of a copartnership, as the defendants contend, but a case of joint ownership, with the management of the joint property intrusted to one of the owners as general agent for all. Their incapacity to contract with each other is no bar to the validity of their joint promise to a third person." *Edgerly* v. *Equitable Life Assurance Society*, 287 Mass. 238, a decision on demurrer, rests on the grounds that no actual agency was alleged, and that a "joint venture," which was assumed to be alleged, imports a contract between the adventurers which could not be recognized when between husband and wife. In the present case no contract between husband and wife appears. Each was simply agent for both, and together they dominated the situation.

The decree ordered a transfer of shares to the plaintiff from Margaret A. McBride, not because she was solely liable, but because she held in her own name shares with which the joint contract of the defendants could be specifically performed. Since the defendants, who were in full control of the corporation, had failed to provide any stock for the plaintiff in satisfaction of his rights under the contract, they must satisfy him out of their own joint or several holdings, however obtained.

*Decree affirmed with costs.*