Raymond A. Flynn, Trustee in Bankruptcy of Illini Airlines, Inc., Plaintiff-Appellant, v. Kenneth P. Zimmerman, Defendant-Appellee, Consolidated With Kenneth P. Zimmerman, Plaintiff-Appellee, v. Douglas G. Harvey, Defendant-Appellant, and Raymond A. Flynn, Trustee in Bankruptcy of Illini Airlines, Inc., Defendant-Appellant.

Gen. No. 11,315.

Second District, Second Division.

January 5, 1960.

Released for publication January 22, 1960.

Alexander L. Haglund, of Sterling, for Raymond A. Flynn, appellant, and Bull, Ludens, and Potter, of Morrison (Mason Bull and Robert H. Potter, of counsel) for Douglas G. Harvey, appellant.

Karl Yost, of Morrison, Jacob Cantlin, and Donald E. Blodgett, of Rock Falls, for appellee.

JUSTICE WRIGHT delivered the opinion of the court.

The pleadings in the above entitled cases present substantially the same issues of fact. The first case consisting of a complaint and counterclaim was at law. The second case in equity praying for substantially

the same relief as prayed for in the counterclaim in the first suit. The first case was transferred to the chancery docket and the causes were consolidated for trial before the court in chancery. The bankruptcy of Illini Airlines, Inc., was suggested to the trial court and Raymond A. Flynn, Trustee in Bankruptcy, was substituted for Illini Airlines, Inc.

Plaintiff, Illini Airlines, Inc., filed an action to recover from Kenneth P. Zimmerman, defendant, $7,000 received by him, while President and Director of Illini Airlines, Inc., from M. & G. Corporation as commission on a sale by M. & G. Corporation to Illini Airlines, Inc., of a DeHavilland Dove aircraft for the sum of $72,000. The trial court found that Douglas G. Harvey, principal shareholder of Illini Airlines, Inc., knew that Kenneth P. Zimmerman was to receive a commission on the sale of the aircraft and consented to it; that Kenneth P. Zimmerman was not liable to either Illini Airlines, Inc., or Douglas G. Harvey for the $7,000 commission claimed by Illini Airlines, Inc. Plaintiff, Illini Airlines, Inc., appeals from this portion of the decree of the court.

Illini Airlines, Inc., plaintiff, also sought to recover from Zimmerman for parts and services furnished to him in the sum of $265.80, which was admitted by Zimmerman, who filed a counterclaim for services and items furnished by him to Illini Airlines, Inc., amounting to $3,925.08 and for salary due him and withheld in the sum of $400 making a total due him of $4,325.08. Illini admitted owing Zimmerman $1,070.60. The trial court entered judgment on the counterclaim against Illini Airlines, Inc., and Harvey for $3,656.91, jointly and severally, for the services and items furnished. Illini Airlines, Inc., and Harvey appeal from this judgment as to some of the items for which recovery was allowed.

470

Zimmerman, in his counterclaim, further asked that either Illini Airlines, Inc., or Douglas G. Harvey be required to give him twelve hundred shares of stock of Illini Airlines, Inc., under the terms of an alleged contract. Illini Airlines, Inc., denied that it was a party to any contract, and Harvey insisted the contract could not be enforced by Zimmerman. The court found that as a result of the failure of Douglas G. Harvey to transfer twelve hundred shares of his stock in Illini Airlines, Inc., to Zimmerman on January 1, 1956, that Kenneth P. Zimmerman sustained damages in the amount of $6,000 and judgment was accordingly entered against Harvey for this sum. Harvey appeals from this judgment.

Zimmerman, prior to January 26, 1955, operated the Rock Falls Flying Service at the Rock Falls Airport south of Rock Falls, Illinois. He maintained the airport and hangar, sold gasoline and oil, repaired planes, gave flying lessons, performed chartered flights and occasionally delivered freight. Harvey, on the other hand, was not too well versed in the airline business except that he was interested in flying and had his own small plane, which was kept at the Rock Falls Airport. Zimmerman and Harvey became very friendly and discussed the possibility of starting an airline for flights from the Rock Falls Airport to Chicago, and later to include other cities. These conversations culminated in the formation and organization of the Illini Airlines, Inc.

Illini Airlines, Inc., was incorporated in Illinois on January 26, 1955, with the issuance of Three Thousand One Hundred Fifty shares of stock to Douglas G. Harvey and Five Hundred Fifty shares to his father-in-law, Jack Bowman. No shares were issued to Zimmerman. Zimmerman was elected President and Director, Harvey was elected Vice President, Treasurer and

471

Director and Bowman was elected Secretary and Director. The three of them constituted the Board of Directors. Harvey proposed to Zimmerman that he take over the active management of the new corporation and in return, at the end of the calendar year, 1955, Harvey would deliver and transfer to Zimmerman twelve hundred shares of common stock in Illini Airlines, Inc., which was owned by him.

On the first of August, 1955, Zimmerman made his first contact with M. & G. Corporation of Green Bay, Wisconsin, through Phil Roshong, its pilot and agent, for the purchase of a DeHavilland Dove Airplane. Roshong brought the plane to the Rock Falls Airport for inspection by Zimmerman and Harvey. During the first or second conversation between Zimmerman and Roshong, a commission for Zimmerman on the sale of the plane was discussed and Zimmerman asked if he would be protected. He was told that the M. & G. Corporation wanted to get $65,000 net for the plane and if it was sold for $72,000 he, Zimmerman, would receive a commission of $7,000. Zimmerman recommended to Illini Airlines, Inc., that the price of $72,000 was fair and satisfactory, and thereafter on August 11, 1955, Zimmerman as president of Illini Airlines, Inc., purchased a draft on The First National Bank of Chicago for $72,000 and bought the DeHavilland Dove. A few days later, by check dated August 16, 1955, the Rock Falls Flying Service owned by Zimmerman received the commission of $7,000. After the DeHavilland Dove was purchased on his own recommendation, Zimmerman learned that the engines had more hours on them than their log record indicated and, consequently, replacement engines had to be purchased. In addition it was necessary to make a number of repairs to put the Dove in good operating condition.

Airline operation was commenced in March, 1955, and the Rock Falls Airport served as the base of opera-

tion. Two trips a day were flown three days a week to Chicago, with Zimmerman as pilot. In that capacity, he was paid $5 per hour by the corporation. In June, 1955, flight operations were expanded to include Freeport, Illinois, and in September, Rockford was included on the schedule. In November, 1955, an additional pilot was added. The base of operation of the airline remained at Rock Falls until January, 1956, when it was moved to Rockford, Illinois. In addition to the payment of $5 per hour for pilot services, Illini Airlines, Inc., paid Zimmerman, during 1955, the sum of $11,184 for gasoline, hangar rental and parts; $4,000 commission on the sale of an Apache two engine plane originally ordered by Harvey but paid for by Zimmerman as President of Illini Airlines, Inc.; and $7,000 commission on the sale of the DeHavilland Dove aircraft to Illini Airlines, Inc., for $72,000. On January 1, 1956, when the base of operation was moved to Rockford, Zimmerman was placed on a salary. There is some dispute about the amount of the salary but the record seems to disclose that it was $600 monthly. He continued as President of Illini Airlines, Inc., until May 23, 1956, on which date he was removed from office and Harvey assumed the office of president.

 The directors of a corporation are in a fiduciary relation with the corporation and the stockholders. The law is well settled that a trustee cannot without a breach of the trust deal with its subject-matter in such a manner as to make a profit for his own benefit. It requires no keen moral perception to recognize the obvious justice of this universal rule of law, justice and morality. The directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule, in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their

relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders, and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation. The stockholders are entitled to the utmost fidelity of the directors in the interest of the stockholders. It is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those they represent. Dixmoor Golf Club, Inc. v. Evans, 325 Ill. 612, 156 N. E. 785.

██ A director of a corporation is subject to the ordinary rule that an agent to sell cannot sell to himself, and an agent to buy cannot buy of himself. The interests of buyer and seller are inconsistent, and an agent cannot represent both interests at the same time. While a director is not disqualified from dealing with the corporation and buying its property or selling property to it, he must act fairly and be free from all fraud or unfair conduct, his transactions will be subjected to the closest scrutiny, and, if not conducted with the utmost fairness, to the end that the corporation shall have received full value, they will be set aside. Nowak v. National Car Coupler Co., 260 Ill. 260, 103 N. E. 222. Directors of a corporation are trustees of its business and property for stockholders and cannot in their dealings with corporate property or business, use such relationship for their own personal gain. They are under a duty to administer the corporate affairs for the common benefit of all stockholders and to exercise their best care, skill and judgment in management of corporate business solely in the corporation's interest. Pelcak v. Bartos, 328 Ill. App. 435, 66 N.E.2d 465.

The often quoted Biblical phrase that "one cannot serve two masters" is quite apropos to Zimmerman's

sale of the Dove airplane to Illini Airlines, Inc., for $72,000. After the Dove airplane was purchased, Zimmerman learned that the engines had more hours on them than their log record indicated. Replacement engines, therefore, had to be purchased and a number of repairs were necessary to put the Dove in good operating condition. Zimmerman's desire to receive the $7,000 commission apparently caused him to overlook or fail to check accurately the number of hours of engine time on the Dove engines. After the plane was purchased the Civil Aeronautics Administration notified Illini Airlines, Inc., that the engines required major overhauling at one thousand hours. Had Zimmerman not been receiving a commission, it seems obvious from the record that he would have more carefully scrutinized the mechanical condition of the plane and that the purchase could have been made for a less amount.

Zimmerman admitted receiving the commission when first confronted by Harvey but at that time Zimmerman stated that he didn't think there was anything wrong with his receiving a commission and that he was not versed in corporate affairs. He did not mention at that time that Harvey or Illini Airlines, Inc., knew definitely that he was to receive a commission. Zimmerman testified: "I never told him (Harvey) specifically I was to receive a commission of $7,000. I never stated in so many words that I had received a commission on the purchase of the DeHavilland Dove." Harvey testified that he did not know that Zimmerman was to receive a commission on the sale. Mr. Zimmerman's wife testified that prior to the purchase of the airplane involved, she informed Harvey that her husband received a commission on the sale of all new and used aircraft.

██ ██ A director is not disqualified from selling property to his corporation, but he must act fairly and

be free of all fraud or unfair conduct. His transaction will be subject to the closest scrutiny and if not conducted with the utmost fairness, it will be set aside. Nowak v. National Car Coupler Co., supra. We are of the opinion that a director is under a duty to make full disclosure to the corporation and its stockholders that he is selling property to it and receiving a personal gain. The corporation and stockholders are entitled to a complete disclosure of the entire transaction, which necessarily would include the exact net cost to the director and the amount of commission paid to him or the amount of his profit. Only then, could the corporation intelligently decide whether it would do business with one of its own directors or seek purchases from other parties. Zimmerman admittedly did not do this. The alleged conversation by his wife with Harvey cannot suffice the duty imposed upon the director himself to act fairly, honestly and with full disclosure. We are, therefore, of the opinion that the trial court erred in failing to require Zimmerman to account to Illini Airlines, Inc., for the commission of $7,000 he received on the sale of the DeHavilland Dove airplane to it.

The trial court found that the claims of Zimmerman for salary, merchandise and services rendered Illini Airlines, Inc., and the offset thereto, were established by a preponderance of the evidence and rendered judgment in the sum of $3,656.91. The trial court stated that Illini Airlines, Inc., was merely an alter ego for Harvey and, therefore, the court entered judgment for said amount against Illini Airlines, Inc., and Harvey, jointly and severally. We cannot agree with the trial court that Illini Airlines, Inc., was merely an alter ego of Harvey. If said judgment against Harvey is to stand there must be evidence of an agreement or responsibility on the part of Harvey for these services and since the record is void of any such agreement,

476

responsibility or contract, we conclude that the judgment in the sum of $3,656.91 against Harvey is in error and should be reversed. On the other hand, it is clear from the record that Illini Airlines, Inc., had agreed to pay for certain merchandise, services and salary.

█ There was much conflicting evidence about most of the items and we are not inclined to disturb the findings of the chancellor in this respect. The decree of the chancellor will not be reversed unless it is palpably contrary to the weight of the evidence. Elliott v. Pure Oil Co., 10 Ill.2d 146, 139 N.E.2d 295. Therefore, the judgment in favor of Zimmerman in the sum of $3,656.91 against Illini Airlines, Inc., should be affirmed.

█ The trial court found that Harvey and Zimmerman agreed that Zimmerman was to turn over his charter flight business and perform services for ten months as manager of Illini Airlines, Inc., for $600 per month, in exchange for twelve hundred of Harvey's shares in Illini Airlines, Inc., valued at $5 per share. Zimmerman was to retain all the remainder of his business as owner and operator of the Rock Falls Flying Service. The trial court from all of the evidence and circumstances before it, concluded and made a finding of fact that as a result of Harvey's failure to transfer the twelve hundred shares of stock to Zimmerman that Zimmerman sustained damages in the amount of $6,000. Harvey admits he contracted to exchange the twelve hundred shares of his Illini Airlines, Inc., stock for Zimmerman's services during the ten months of 1955. Harvey breached this contract by failing to deliver the stock. The only dispute between the parties seems to be the value of the shares of stock as of the date that they were to be delivered by Harvey to Zimmerman. No shares of stock had been sold to the public and it would have been impossible for the

trial court to ascertain any real market value of the stock. It was, therefore, proper for the court in arriving at its value for the purpose of ascertaining damages to consider all the circumstances of the corporation, its finances and business. The fact that personal property has no market value does not restrict the recovery to nominal damages only, its value or the plaintiff's damages must be ascertained in some other rational way, and from such elements as are attainable. 15 Am. Jur., Damages, Sec. 125. To the same effect, see Henry v. North American Ry. Const. Co., 158 Fed. 79, wherein the following rule was stated at page 81:

"The bonds, having acquired no market value, did not, however, leave the defendant helpless. Resort in such contingency may be had to other sources of information for ascertaining the actual value. The plaintiff would have the right to show that the real intrinsic value of the bonds exceeded their face or market value; and the defendant, in the absence of any established market value, would have the right to show that the real value was less than that called for on their face. 'In such cases the real value is to be ascertained from such elements of value as are obtainable.'"

There is no testimony by Harvey as to the exact value of the stock and Mr. Bowman, Vice President of Illini Airlines, Inc., testified that he did not know what the value of the stock was. The trial court heard all of the evidence concerning the financial business of the corporation and we cannot say that its findings of fact concerning the value of the stock is manifestly against the weight of the evidence.

The judgment finding Kenneth P. Zimmerman not liable to Illini Airlines, Inc., in the sum of $7,000 on account of commission collected by Zimmerman from the sale of the DeHavilland Dove Airplane to Illini Airlines, Inc., is reversed and remanded with direc-

478

tions to enter judgment that Illini Airlines, Inc., or its Trustee in Bankruptcy, have and recover the sum of $7,000 from Kenneth P. Zimmerman.

The judgment that Kenneth P. Zimmerman have and recover of Illini Airlines, Inc., or its Trustee in Bankruptcy, the sum of $3,656.91 is affirmed.

The judgment that Kenneth P. Zimmerman have and recover of Douglas G. Harvey the sum of $3,656.91 is reversed.

The judgment that Kenneth P. Zimmerman have and recover of Douglas G. Harvey the sum of $6,000 is affirmed.

Judgment affirmed in part, reversed in part and remanded with directions.

SOLFISBURG, P. J. and CROW, J., concur.