HENRY GEVING *et al.*, Plaintiffs-Appellees, *v.* J. R. FITZPATRICK, Defendant-Appellant.

Fourth District   No. 14090

Opinion filed January 6, 1978.—Rehearing denied February 7, 1978.

Thomas F. Roche, James F. Flanagan, and George W. Keeley, all of Halfpenny, Hahn and Roche, of Chicago, for appellant.

Robert E. Gillespie, of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
The A. Lincoln Wax Museum.
Like a modern-day Madame Tussaud, the sculpting of figures from wax

was a unique and gifted talent that was nurtured and developed by a certain Henry Geving.

Furthermore, he researched the possibility of a wax museum in Springfield dedicated to the Lincoln heritage. However, he and his wife lacked sufficient capital to organize such a venture. It was not until they introduced their plan to J. R. Fitzpatrick, who had previously tried to build a wax museum in Springfield, that the idea began to take form.

The Gevings and Fitzpatrick agreed in essence that Fitzpatrick would supply the capital and a lease to real estate located near the Lincoln Home site and the Gevins would create the figures and tableaux and direct the remodeling of the building to accommodate the museum. The Gevings were to be employed (before and after the museum was opened) at a specified weekly salary.

The business was to be incorporated with the Gevings and Fitzpatrick each receiving 50 percent of the issued shares of the proposed corporation. This understanding was reduced to writing by defendant's attorney in an agreement entitled "Abraham Lincoln Wax Museum, Inc. Subscription Agreement." The agreement, in part, stated that:

> "* * * In consideration of their mutual promises the parties hereto agree to purchase in the manner hereinafter specified the issued shares of Abraham Lincoln Wax Museum, Inc. * * *.
>
> J. R. Fitzpatrick in payment of his share shall do the following:
>> (a) Procure a lease to the premises * * *.
>> (b) Remodel, renovate and improve the aforesaid premises * * *.
>> (c) Loan to Henry G. Geving and Andrea C. Geving * * *.
>> (d) Cancel the indebtedness * * * upon the incorporation of Abraham Lincoln Wax Museum, Inc. and the full performance of the duties of Henry G. Geving and Andrea C. Geving as specified herein.
>
> Henry G. Geving and Andrea C. Geving in payment for their shares shall do the following:
>> (a) Prepare, deliver and transfer * * * a minimum of 18 wax figures * * *.
>> (b) Deliver to J. R. Fitzpatrick for sums loaned them a note * * *.
>> (c) Accept employment as operators of Abraham Lincoln Wax Museum on or about August 1, 1971, at the following weekly salaries: * * *."

Although the corporation was not organized, the museum opened on August 7, 1971. It was managed by the plaintiffs until October of 1971 when Henry Geving left Springfield for Rochester, Minnesota, for medical treatment. Shortly thereafter, Andrea Geving also left the

museum and joined her husband in Rochester, but later returned to Springfield and worked at the museum. She then presented salary checks to Fitzpatrick for his signature which he refused to sign. Andrea Geving returned to the museum and put a sign on the door which read "closed until further notice" and left the premises. Fitzpatrick had a security interest in the 18 wax figures created by the Gevings to secure repayment of monies advanced by him. He foreclosed this security interest and the figures were purchased by his son-in-law and daughter.

After the Gevings' initial complaint was dismissed, they filed an amended complaint consisting of eight counts. Fitzpatrick's motion to dismiss was allowed as to all counts except count III for *quantum meruit*. Plaintiffs appealed the dismissal to this court which reversed the trial court's dismissal of count I of the amended complaint which sought relief for breach of contract. At the subsequent trial the jury rendered a verdict for plaintiffs for breach of contract in the amount of $93,800 and defendant appeals.

Fitzpatrick first contends that his status and liability were erroneously decided. Although conceding that this court's earlier determination generally supported Geving's view of the agreement as a promoter's contract, Fitzpatrick claims he was not a promoter.

A promoter is one who actively assists in creating, projecting and organizing a corporation. (*Goodwin v. Wilbur* (1902), 104 Ill. App. 45; 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §189, at 657 (perm. ed. 1974). The term includes:

> "* * * those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business." (*Old Dominion Copper Mining & Smelting Co. v. Bigelow* (1909), 203 Mass. 159, 177, 89 N.E. 193, 201.)

Also contained in the ambit of promoters are those who contract with or join the first mover towards incorporation. (Fletcher §189, at 657.) The determination whether a person is a promoter is a question of fact which requires consideration of all the circumstances. *Jackson v. Anderson* (1934), 355 Ill. 550, 189 N.E. 924; *Daly v. Jackson* (1961), 226 Ore. 471, 360 P.2d 542.

■■■ Defendant tendered the following instruction concerning the definition and liability of a promoter which was refused by the court:

> "The defendant, James R. Fitzpatrick, is sued as the promoter of the corporation described in the complaint. A promoter is one who, alone or with others, undertakes to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter and to establish it as fully able to do its business.

> If you find that the defendant, as a promoter of the instant corporation, sought out the plaintiffs and suggested the enterprise with the subsequent subscription agreement requiring plaintiffs to supply the talent and labor and the defendant to supply the capital and managerial services, then the duties to the plaintiff arising upon their performance of their duties under the subscription agreement, although stipulated to be performed by the proposed corporation, were the duties of defendant.
>
> If you find, on the other hand, that the defendant was not a promoter of the instant corporation, then the defendant is not responsible for the duties of the proposed corporation to the plaintiffs regardless of their performance of their duties under the subscription agreement."

Although a person is entitled to have the jury instructed as to his theory of the case, obviously the instruction must be an accurate statement of the law. (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.) Defendant's instruction was properly refused in this case because although the first paragraph correctly states the definition of a promoter, the second paragraph places undue weight on the initiation of the idea of the corporation because one who contracts with or joins the first mover towards incorporation is also a promoter. Fletcher §189, at 657.

Although Fitzpatrick did not initiate the idea of this particular museum, he joined the Gevings in implementing it once it had been presented to him. Under the parties' contract, Fitzpatrick was to procure a lease, remodel the premises, loan money to the Gevings, and cancel the indebtedness upon the incorporation of the museum, while the Gevings were to prepare the wax figures, deliver a note to Fitzpatrick, and accept employment. Since a jury could find from these facts that the parties together undertook to procure the rights, instrumentalities and capital for the corporation, defendant's post-trial motion for a judgment notwithstanding the verdict on the question of whether defendant was a promoter was properly denied. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ However, the word promoter does not magically solve all problems concerning relations, rights and responsibilities. (38 Harv. L. Rev. 887 (1925).) The mere fact one is a promoter does not make him personally liable to his co-promoter absent an agreement indicating an intent to impose such an obligation. (*Schuette v. Winternitz* (Colo. App. 1972), 498 P. 2d 1183; *Hart v. Miller* (1955), 49 Del. 477, 119 A. 2d 751; *Bailey v. Burgess* (1891), 48 N.J. Eq. 411, 22 A. 733.) When there is a contract between co-promoters, it may be enforced against each other. Fletcher §191, at 664-65.

The written agreement here created certain reciprocal rights and duties

binding and benefiting both parties. Since the corporation was the contemplated result and not the proposed beneficiary of this contract, the natural conclusion is that individual rather than corporate liability was intended. *Hushion v. McBride* (1936), 296 Mass. 4, 4 N.E.2d 443.

Fitzpatrick next claims the trial court abused its discretion in allowing the jury to consider the business evaluation of plaintiff's expert, Ralph Emery, because he was an "interested witness" whose opinion was the product of speculation and conjecture. Fitzpatrick also alleges his preliminary cross-examination of Emery was improperly denied and his cross-examination was unduly restricted.

■■ Upon Fitzpatrick's failure to create the corporation, Gevings had a right of action for breach of the contract to form the corporation. (1 W. Fletcher, Cyclopedia of the Law of Private Corporations §221, at 799-801 (perm. ed. 1974).) There is a problem, however, in ascertaining any real market value of the stock when none has been sold to the public. The court in *Flynn v. Zimmerman* (1960), 23 Ill. App. 2d 467, 163 N.E.2d 568, discussed this situation and reached the following conclusion:

> "It was, therefore, proper for the court in arriving at its value for the purpose of ascertaining damages to consider all of the circumstances of the corporation, its finances and business. The fact that personal property has no market value does not restrict the recovery to nominal damages only, its value or the plaintiff's damages must be ascertained in some other rational way, and from such elements as are attainable." (23 Ill. App. 2d 467, 478, 163 N.E.2d 568, 573-74.)

Since there was no history, good will, earning capacity, dividend paying capacity, stock book value, or representative loss and profit statements available for the museum, the circumstances, finances, and business of the proposed corporation were limited.

■■ To help ascertain the damages in this case, Ralph Emery testified in response to a hypothetical that the value of the wax museum as a business would be from $200,000 to $300,000. Emery had manufactured and sold wax figures, had had financial interests in several wax museums, was presently building two wax museums, and indicated an interest in building a museum in Springfield. Contrary to defendant's assertion, this Springfield museum interest merely reflected his general interest in museums and was not evidence of a disqualifying interest. Emery's background and experience rendered his opinion based on the facts in evidence worthy of the jury's consideration. *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14; *City of Chicago v. George F. Harding Collection* (1965), 70 Ill. App. 2d 254, 217 N.E.2d 381.

■■ The qualifications of a witness as an expert should be established before he is allowed to give his opinion to the jury. This includes the right

to preliminary cross-examination. (*People v. Sawhill* (1921), 299 Ill. 393, 132 N.E. 477.) Although defense counsel was not given such an opportunity in this case, this error was harmless since defendant's subsequent cross-examination did not cause the judge to reconsider his prior finding that the witness was an expert. Finally, the trial court's refusal to allow defense counsel repeatedly to ask the same line of questioning was not an abuse of the court's discretion over the latitude of cross-examination. *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564.

■■ Fitzpatrick also alleges that the jury was improperly instructed on the damages occasioned by his breach of a pre-incorporation promoter's contract. The court instructed the jury that it could award damages based on the fair market value of a business at the time of the breach plus the future profits of the business from the time of the breach to the trial. Fitzpatrick contends this would enable the plaintiffs to get a double recovery. The jury was also instructed that it could award damages for lost wages occasioned by a breach of the employment agreement contained in the promoter's contract. Fitzpatrick claims this agreement, lacking a specified period of duration, was terminable at will without any liability. We hold that any error in the giving of these instructions did not prejudice the defendant. The expert witness testified that the fair market value of the business was $200,000 to $300,000 while the jury returned a verdict of $93,800. Since the Gevings' damages for the loss of their 50% share of the value of the business was greater than the jury's verdict, the judgment was not excessive. Moreover, Fitzpatrick does not contend that the total damages awarded were excessive. Where there is no allegation of excessive damages, errors in instructions going to the measure of damages must be viewed as harmless. *Probus v. Brown* (1975), 33 Ill. App. 3d 639, 338 N.E.2d 231.

■■ Another contested jury instruction concerns the elements of the breach. The court instructed the jury that the plaintiff claimed the defendant breached the agreement by, among other things, taking possession of and selling the wax figures and refusing the Gevings access to the premises. Fitzpatrick claims these items were independent, separate and distinct from his contractual obligations. Since these actions prevented the fulfillment of the promoter's contract and thus were part of the alleged breach, they were properly included in the instruction.

■■ Finally, defendant claims the total effect of certain rulings and directions of the trial judge denied him a fair trial: the denial of a continuance; the direction to the defendant to finish the case in one day; and the scheduling of night sessions. Considering the points singly, there does not appear to be a manifest abuse of discretion by the court which would require reversal. (*Kula v. Sitkowski* (1946), 395 Ill. 167, 69 N.E.2d 688.) Nor does the cumulative effect of the alleged errors indicate the

defendant's rights were prejudiced. *Oudshoorn v. Warsaw Trucking Co.* (1976), 38 Ill. App. 3d 920, 349 N.E.2d 648.

All other points raised by the defendant have been considered by the court and found to be without merit.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.