QUALITY WOOD CHIPS, INC.,
Appellant,

v.

Larry ADOLPHSEN and A. D.
Crawford, Respondents.

No. WD 32508.

Missouri Court of Appeals,
Western District.

May 4, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 23, 1982.

Weldon W. Perry, Jr., and Jeffrey B. Tonkin, Kansas City, for appellant.

Michael W. Manners and Robert H. Martin, of Paden, Welch, Martin, Albano & Graeff, P.C., Independence, for respondents.

Before CLARK, P. J., and KENNEDY and MANFORD, JJ.

MANFORD, Judge.

Action in equity for temporary and permanent injunction. The cause was tried to the court and judgment in the form of an order was designated as a final judgment. The judgment is reversed with instructions.

Two points are presented, which in summary allege the trial court erred in (1) refusing to issue the injunctions sought because the evidence established continued irreparable harm to appellant; and (2) applying the doctrine of subrogation.

Appellant is a Missouri corporation, incorporated on February 13, 1979. It manufactures and sells wood chips, which are in turn used in the production of paper products. It has as its president and sole director one Warren Hamilton.

Respondents are stockholders in appellant corporation. Neither respondent has ever held the position of officer or director. Appellant's main asset is a Mobark Wood Chipper with an approximate value of $166,000. Respondents acquired the chipper by purchase and the execution of their promissory note/security agreement with the Blue Ridge Bank and Trust Co. in the

sum of $159,352.92 on February 5, 1979. There is no dispute between the parties that the note/security agreement predated appellant's incorporation. Respondents admit that at the time of purchasing the chipper, they contemplated no business relationship with Hamilton. They testified, however, that they intended to incorporate under the name of Quality Wood Chips and the note/security agreement were executed in the name of Quality Wood Chips. The note/security agreement carried a guarantee by respondents which personally obligated them. Respondents acknowledged this personal liability, but emphasized that the equipment orders sent to Mobark were prepared in the name of Quality Wood Chips. Hamilton testified that appellant corporation did not assume the debt incurred by purchase of the chipper by way of any corporate resolution or any act by himself in his capacity as director or officer of appellant corporation.

During the initial months of operation, appellant corporation earned a profit that was distributed to respondents in the form of equal dividend payments totaling approximately $2,250 per month. The treasurer for appellant corporation testified that respondent Adolphsen requested his share of the corporate profits be paid directly to the Blue Ridge Bank and Trust Co. The request was complied with, and payments forwarded to the bank were posted against the loan account of respondents and were never treated as corporate debts owed the bank.

In November, 1980, a dispute between the parties arose, although the record goes wanting for details of the dispute. The result was that respondents secreted the chipper. Hamilton made repeated demands for its return, but was refused. The consequence of the chipper not being returned was the inability of appellant corporation to continue operation and earn a profit since November, 1980. On January 7, 1981, appellant filed its petition for temporary and permanent injunctions, seeking the return of the chipper. The relief sought was denied following an evidentiary hearing.

The standard of review in the instant case is under Rule 73.01, as that rule has been interpreted by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), and the judgment of the trial court will not be disturbed unless there is no substantial evidence to support the judgment, unless the judgment is against the weight of the evidence, or unless the judgment erroneously declares or applies the law.

In the instant case, the relief sought by appellant is in the nature of a mandatory injunction which is the request for an affirmative act. Appellant could have pursued an action in replevin, but that question has never been presented by the parties and does not come before this court.

The record reveals that the chipper was contributed to appellant corporation by respondents in exchange for equity stock. Hamilton contributed $86,777.00 in additional equipment to the corporation. The record also reveals that it is impossible for appellant corporation to continue in business and make a profit without the chipper.

In defense to appellant corporation's claim, respondents claimed they were subrogated to the rights of the bank creditor when appellant stopped making payments on the chipper. Appellant counters this defense with the claim that the underlying debt was created by respondents prior to appellant's corporate existence and obviously without its authority. Respondents counter that claim by asserting the debt was ratified by appellant corporation by the acts of appellant corporation making payments on the note.

The rule of subrogation has been addressed by our courts. In *Kroeker v. State Farm Mutual Automobile Ins. Co.*, 466 S.W.2d 105, 110 (Mo.App.1971), this court stated:

> Subrogation originated as a creature of the common law. Basically, it is classified as either legal or conventional. Legal subrogation arises out of a condition or relationship by operation of law, whereas conventional subrogation arises by act or agreement of the parties. (citation omitted) Subrogation is founded on

principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all parties without regard to form. (citations omitted) 'As a general rule, any person who, pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default.' 83 C.J.S. Subrogation § 16.

The right of subrogation is not necessarily limited to those legally bound to make payment, but extends also to persons who pay a debt in self-protection upon the premise they might suffer loss if the obligation is not satisfied or discharged. 73 Am. Jur.2d *Subrogation* § 25 (1974). In support of taking possession of the chipper, respondents cite *Lewis v. Paul Brown Realty & Investment Co.*, 193 S.W.2d 13, 15 (Mo. 1946), which declared:

'If one secondarily liable pays a debt, he is entitled . . . (there being no other facts in the case contra), to be subrogated to all the rights of the creditor, including securities held by him, and this, although there is no express agreement for subrogation; the right arises by operation of law.' *Loewenstein v. Queen Ins. Co.*, 227 Mo. 100, 117, 127 S.W. 72, 76.

Although it is true that subrogation is designed to compel the ultimate discharge of a debt by one, who in justice, equity and good conscience should pay it; subrogation exists only against the principal debtor and not one secondarily liable. *Street v. Lincoln National Life Ins. Co.*, 347 S.W.2d 455 (Mo.App.1961). Subrogation is not a self-help remedy and while characterized as a substantive right, the manner of asserting it is procedural. *Giambelluca v. Missouri Pac. Railroad Co.*, 320 S.W.2d 457 (Mo.1959).

Respondents also assert that appellant corporation ratified the debt to the bank as a corporate obligation. In support of this assertion, respondents emphasize the application and payment of Adolphsen's dividend to the creditor bank. Respondents cite a general principle that ratification will be implied where "in addition to receiving the benefits of the unauthorized transaction, the corporation, with full knowledge of the facts, makes payments on account of such benefits, as where it . . . makes payments on a note executed or indorsed on its behalf without authority . . ." 19 C.J.S. Corporations § 1020 (1940) and *Schmidt v. Morival Farms*, 240 S.W.2d 952 (Mo.1951).

The question that must be answered is whether the action of appellant's treasurer in forwarding Adolphsen's dividend payment to the creditor bank was an act sufficient to confer upon appellant the status of principal debtor within *Street, supra.*

As noted above, respondents admit that at the time the chipper was ordered, they had no business relationship with Hamilton and did not contemplate such relationship. The record also reveals that at that time, appellant corporation had not come into being. Respondents, however, emphasize their intention to incorporate under the name Quality Wood Chips in addition to the fact that equipment orders were prepared under that name.

On the question of ratification, it has long been recognized in Missouri that a corporation is not liable on a contract made prior to its incorporation unless credit was given the corporation to be formed, or unless it ratified or received benefits therefrom. *Neosho Motors Co., Inc. v. Smith*, 59 S.W.2d 802 (Mo.App.1933). The instant record reveals no pre-incorporation acts of promoters being formally ratified by the appellant corporation or where the agreement was made by a party who was the sole organizer, shareholder, director, and officer of the corporation. See *Bader Automotive and Industrial Supply Co. v. Green*, 533 S.W.2d 695 (Mo.App.1976) and *Austin and Bass Builders, Inc. v. Lewis*, 350 S.W.2d 133 (Mo.App.1961).

■ The mere formulation of a contract by individuals who subsequently form a corporation is not sufficient to bind the corporation. *Newsrack Supply, Inc. v. Heinle*, 127 Ga.App. 843, 195 S.E.2d 193 (1973). Stated another way, where a corporation was the contemplated result and not the proposed beneficiary of a contract, it has been held that individual liability was intended. *Geving v. Fitzpatrick*, 56 Ill.App.3d 206, 14 Ill.Dec. 175, 371 N.E.2d 1228 (1978).

■ Respondents' attempt to invoke the doctrine or rule of subrogation is not supported by the record. The record is devoid of any formal action taken by appellant corporation in authorizing, assuming or ratifying, or in any other manner, approving the debt to the creditor bank so as, in any manner, to make itself primarily liable for a default in payments. Without question, the record shows that Hamilton, as president and board member, did nothing to ratify the debt, and it is axiomatic that an effective ratification must be made by one having the power to do the act for himself. *Grafeman Dairy Co. v. Northwestern Bank, et al.*, 290 Mo. 311, 235 S.W. 435 (banc 1921). The mere forwarding of Adolphsen's dividend payment to meet his personal debt to the creditor bank does not constitute ratification by the appellant corporation. It is clear from the evidence that payment of the dividend to the creditor bank was a convenience and benefit for Adolphsen and not appellant corporation.

The record does not demonstrate that appellant corporation refused to make dividend payments to respondents. Thus, respondents could meet their obligation to the creditor bank until such time as they secreted the chipper. It appears that the trial court assumed appellant's right to possession of the chipper was synonymous with a corporate debt obligation to pay for the chipper. This assumption is not supported by the evidence upon this record. It is shown that the debt was incurred, and appellant corporation was then created. The evidence further reveals that the documents evincing the indebtedness, accompanied by the personal guarantee by respondents, pre-dated the incorporation of appellant. Appellant was then incorporated and respondents obtained an equity stock interest in appellant corporation by contributing the chipper as capital. There was no ratification of the debt, and appellant corporation, upon its books of record, never acknowledged such debt as a corporate debt. The payment by appellant corporation of Adolphsen's dividend payment directly to the creditor bank inured to his benefit and not to appellant corporation. There is nothing in this record that reveals appellant corporation assumed the primary responsibility on the indebtedness. *Street, supra.* The contract giving rise to the indebtedness arose prior to the incorporation of appellant corporation and there is no evidence upon this record to support a finding that appellant was given credit, that it ratified the contract creating the indebtedness, or received a benefit from the contract creating the indebtedness.

The chipper became an item of capital belonging to appellant corporation in exchange for which respondents received an equivalent value in stock equity. The original indebtedness of respondents to the creditor bank, under the facts and circumstances, remained their personal obligation. There is nothing upon this record to support respondents' allegations that ratification should be implied, *Schmidt, supra*, because in order for implied ratification to be applicable, there must be a showing that the corporation, in receiving the benefits of the authorized transaction, makes payments, with full knowledge of the facts, on the accounts of such benefits as where it makes payment on a note executed or endorsed on its behalf without authority. The indebtedness herein did not originate to the benefit of appellant corporation, nor was the indebtedness, as evidenced by the note and security agreement, made on appellant's behalf without its authority. There is no evidence that appellant corporation ever made payment on its own behalf or as a corporate debt upon the note. This payment was authorized and directed by Adolphsen and inured to his benefit, not appellant's.

One remaining argument is offered by respondents. They argue that injunctive relief should be denied because appellant's refusal to make further payments to the creditor bank creates an inference of "unclean hands" sufficient to deny equitable relief. There is nothing upon this record to support respondents' contention. In fact, the trial court addressed this point when it declared, "I have nothing to do . . . with the ethics of the matter." It is clear from the record, both in an evidentiary sense and from the awareness of the issue by the trial court, that there is no substance to respondents' claimed inference of unclean hands.

The trial court erroneously applied the law of subrogation when it ruled that the same was applicable in this case. In addition, the trial court erred in its finding against appellant's petition seeking injunctive relief, since the evidence supports a finding for such relief, thus the judgment is erroneous as against the weight of the evidence. *Murphy v. Carron, supra.*

The parties have submitted their evidence upon the issues, making retrial of this cause neither necessary nor warranted. The judgment, for the reasons set forth herein, is reversed and the trial court is instructed to enter judgment in accordance with this opinion to the favor of appellant by the entry of a proper judgment requiring respondents to return to appellant the Mobark Chip Harvester Model 22, and to permanently enjoin respondents from further conversion of the Mobark Chip Harvester Model 22 and from interference with appellant in the pursuit of its business interests in use of the Mobark Chip Harvester Model 22.

All concur.